JOSHUA KING, plaintiff in error, *vs.* JOHN L. HUGHES, next friend, *et al.*, defendants in error.

1. When one petitioned to be permitted to resign as the guardian of a lunatic, and an order be put upon the minutes, that the petition be granted, and on the same day another guardian was appointed, who gave a bond and was duly qualified :
*Held,* that the granting of the order permitting the resignation, is no judgment that a full settlement and accounting had been had.

2. When a guardian received for his ward a sum of money in specie, or its equivalent in bank-bills, and sets up that in 1862 it was in his hands in the shape of Confederate money, the burden of proof is upon him to show that it got into Confederate money in the due and prudent execution of his duties as guardian.

3. The verdict in this case is supported by the evidence, and it was not error in the court to refuse a new trial.

Guardian and ward. Judgments. Lunatic. Confederate money. New trial. Before Judge BUCHANAN. Floyd Superior Court. January Term, 1874.

John L. Hughes, as next friend for James P. Hughes, a lunatic, filed his bill against Joshua King and Henry A. Gartrell, former guardians of said lunatic, and Samuel Mobley, security upon the latter's bond, in which he alleged, in substance, that King was appointed guardian on the 3d day of July, 1854; that on the 2d day of January, 1855, he received the sum of $1,162 00 from the estate of lunatic's father, and on the 12th of February, 1856, $886 44, from the estate of lunatic's sister, and on the 2d of May, 1859, from Philip R. Dupriest $122 84, and on the 4th of January, 1860, from said Dupriest the further sum of $289 00, in all, $2,500 00; that on June 1st, 1860, said King had for said lunatic $1,891 07, in good and lawful money, par value with specie; that on April 12th, 1862, said King converted said par funds to his own use, with interest from May 21st, 1859, and obtained in lieu thereof Confederate treasury notes of the nominal sum of $2,179 80, at which time one dollar in specie was worth one dollar and seventy-five cents in Confederate money; that on the same day, April 12th, 1862, he deposited the above with

Jesse Lambreth, ordinary; that said ordinary had the right only to authorize King to transfer to his successor; that said fund remained with the ordinary until August 18th, 1862, at which time they were turned over to Henry A. Gartrell, successor to Joshua King, who was appointed at the August term of the court of ordinary, 1862, Samuel Mobley being on said Gartrell's bond; that at said time Confederate money was worth only about forty-five cents in the dollar, and the amount of $2,179 80 was worth only $980 91, which is less by the sum of $1,198 89 in specie; that on January 23d, 1863, Gartrell received from Alabama, Calhoun county court of probate, $2,600 00, part Confederate treasury notes and part state bank bills, Confederate notes being then three dollars for one in specie, and state bank bills two dollars for one in specie; that on the 19th of January, 1863, he received from Dupriest $113 41 in Confederate notes of like value as above; that Gartrell and Mobley used the above moneys in the purchase and sale of cotton, and made net profits to the amount of $2,000 00, or over, which profits petitioner claims; that Gartrell neglected to make any return to the ordinary, and refuses to settle or account. Asks the court to decree that King shall account for the principal and interest received by him, and decree the collection of such sum as is fairly and justly due; and that an account may be taken between said lunatic's estate and the said Gartrell and his surety, Mobley, of amounts received and profits made on the purchase and sale of cotton; asks that Dr. Joshua King answer as follows: The money and property and value received, giving dates and amounts, and how much paid to Gartrell, and when paid, and what kind of money paid?

The answer of King says that he was appointed guardian July 3d, 1854; denies that he received $2,500 00; asserts that, on 7th of June, 1856, he had received from the estates of complainant's father and sister $2,129 78, and paid out, as by vouchers recorded, $319 64, leaving a balance of $1,810 14; that he received, on the 21st day of May, 1859, from P. Dupriest, $122 84, and from the same source, January 4th, 1860,

King *vs.* Hughes *et al.*

$289 00; that he had on hand, June 1st, 1860, $1,890 07, and on the 1st day of April, 1862, the sum of $2,179 80; that he never received any specie, all moneys received up to June 1st, 1860, being in bank-bills, which were not at par with specie; that the balance on hand, April 1st, 1862, was in Confederate treasury notes, which was the then currency of the country; that he, after proper application at the June term, 1862, of the court of ordinary, was discharged as guardian, and it appears of record that Gartrell was appointed on the same day; denies that he did, on the 18th day of August, 1862, or any other day, turn over to Gartrell the sum of $2,179 80 in Confederate treasury notes, or in any other kind of money or funds, but asserts that on April 12th, 1862, he did pay to Jesse Lambreth, ordinary, in funds then current and at par, and equal in value for all purposes to the funds originally received, the sum of $2,179 80, and took a receipt from said ordinary, a copy of which is attached to the answer; denies that fund paid over were worth only forty-five cents on the dollar, or that the sum of $2,179 80 was actually worth only $980 91, but was worth fully as much as the amount received; submits, as a question of law, not of fact, whether or not he was bound to keep the money in bills of the same bank or banks received; denies that he should be held responsible for exchanging one species of paper currency for another; denies that any such loss occurred during the existence of his guardianship; denies that he is indebted to complainant in the sum of $1,198 89, with interest from August 18th, 1862, or in any sum whatever; says he received, in answer to interrogatories—

| | | |
|---|---|---|
| January 2, 1855. From sale of land in Floyd county, ... | $1,000 00 | |
| January 2, 1855. From sale of interest in —— ... ... ... | 162 00 | |
| February 12, 1856. From estate of Martha L. Hughes, ... | 886 44 | |
| May 2, 1859. From claim on P. Dupriest,... ... ... ... ... | 122 84 | |
| January 4, 1860. From claim on P. Dupriest, ... ... ... | 289 00 | |
| | $2,460 28 | |

That these sums were received in the current bank-bills of the day, which were always worth less than specie; that on

the 12th day of August, 1862, he paid to J. Lambreth the balance then in his hands, to-wit: $2,179 80; that he turned over nothing to Gartrell, defendant's successor; alleges that the nominal sum so turned over to the ordinary was $2,179 80, and the real value was the same; denies all manner of combination and confederacy.

The case is made sufficiently clear from the above statement of the pleadings, together with the motion for a new trial which follows, without the necessity of incorporating the testimony.

The jury found for the complainant, against the defendant, King, $900 00 principal, with interest from May 1st, 1865. The fate of the other defendants is immaterial here. King moved for a new trial upon the following, among other grounds:

1st. Because the verdict was contrary to the law and the evidence.

2d. Because it was contrary to the following charge of the court: " The court of ordinary has jurisdiction in all matters properly coming before it, and especially over estates of minors and lunatics. The statute rules regulating mode of doing business by court of ordinary ought always to be conformed to, but if not conformed to, the judgments are irregular, but are not void, and cannot be attacked for that reason before another tribunal. To justify such an attack the judgment must be void. The court of ordinary, having jurisdiction of person and property, and authority being shown, the law presumes the court required all the law requires to have been done, before dismissing King from his guardianship and we cannot go behind that judgment to attack it collaterally. If the jury believe King was dismissed, and Gartrell appointed on same day, and qualified, etc., King ceased to be guardian, and not responsible further as guardian, provided Gartrell succeeded to possession of property and money of the ward held before by King as guardian. A settlement with Confederate treasury notes, when prudent men received and paid them out, and it was the then currency of the country, was a good

and valid settlement, and King is relieved from any further liability."

3d. Because the court erred in charging as follows, the same not being warranted by the evidence: "If you believe King received good money and paid back money depreciated in value, and not equal in value to money received by him, the burden is upon King to show that the money became depreciated without his fault, and in lawful promotion of his trust, otherwise he will be liable for difference in value of money received and money returned by him."

The motion was overruled, and King excepted.

D. S. PRINTUP; DABNEY & FOUCHE, for plaintiff in error.

A. R. WRIGHT; E. N. BROYLES; C. N. FEATHERSTON, for defendants.

McCAY, Judge.

1. There is nothing in the proceedings before the ordinary that concludes inquiry into the accounts of the defendant below. The judgment permitting him to resign and discharging him from his *office* is no adjudication that he has settled with the new guardian. He must be discharged from his office before a new one can be appointed, since it is plain there cannot be two guardians at the same time, one succeeding the other. No settlement can be had until the new guardian is clothed with his office, and this is the clear intent, not only of the Code, section 1848, but of the act of 1850; Cobb's Digest, 339, and act of 1857, pamphlet, 60, 61.

2. It is very plain, from the testimony, that there was never any settlement between the new guardian and the old. The receipt does not purport to be in full, but only of the money left with the ordinary, the specific money. As it was in Confederate money, the new guardian had a right to suppose it was legally and properly in that money, and that either the old guardian had originally got it in that money, or that in the due and legal execution of the trust it had, without fault, got

into that money, and, at last, that is the question in this case. The facts as they appear in the record, are perfectly consistent with the idea that this guardian. mixed this money with his own funds, and that what he paid over to the ordinary was the amount he *was due* the lunatic, not what he had on hand, but what he owed. He got it in par funds. How did it get into Confederate money? Nobody knows but him. To prove that he did not lend it out, is to prove a negative. To prove he did, and that he took Confederate money in good faith from the borrower, was a matter that he could prove if it was true. He might even show this by his returns, but they treat him simply as a debtor, as having mixed the funds with his own. It was for him to show what the truth was.

3. Upon the whole, we think the jury justified by the evidence in their finding, and that there was no error in refusing the new trial.

Judgment affirmed.