GRIFFIN *et al. v.* COLLINS, administrator, and *vice versa.*

1. There is no provision of law in this State for the appointment of a guardian for a person of full age solely on the ground of blindness and limited education ; but where one on his own motion is appointed guardian of such a person, and as a condition precedent to his appointment gives bond with security for the faithful administration of the ward's estate, he and the sureties on his bond are estopped, in a suit on the bond, to deny the validity of his appointment as guardian.

2. An order of the ordinary granting the prayer of a petition filed by one for whom a guardian has been appointed, asking that the guardianship be revoked and the estate turned over to an attorney in fact for the ward, the operation of the order being made conditional upon the guardian's making a full settlement with the ward or her attorney in fact, is not a bar to an action by the administrator of the ward on the guardian's bond.

3. Under the Civil Code, § 2567, publication for four weeks of notice of the application of· a guardian for letters of dismission is necessary before the guardian can obtain a valid discharge.   Consequently, where a discharge was granted without compliance with this requirement of the law, it was not a bar to a suit on the guardian's bond.

4. A receipt by a ward, acquitting the guardian in full of all claims against him, is not valid if signed before the termination of the guardianship.   This is so even though the ward at the time be of sound mind.

5. The period of limitation within which suit may be brought on a guardian's bond is twenty years.   This is not affected by section 2565 of the Civil Code, the effect of which is to provide that in the absence of a full exhibit of the guardian's accounts, and full knowledge by the ward of his rights, receipts in final settlement of the guardian's account will be prima facie binding upon the ward only after the lapse of four years.

6. A receipt signed by a ward acquitting her guardian of all claims against him does not "increase the risk" of the sureties on the guardian's bond, so as to release them from liability.

7. A suit against a guardian and the securities on his bond, seeking to recover on the bond, is an action at law; and where questions of law and fact in such a case are submitted to an auditor and exceptions of fact are filed to the auditor's report, such exceptions should be submitted to a jury for determination.

Argued November 25, 1904.— Decided January 28, 1905.   Rehearing denied February•14, 1905.

Action on bond.　Before Judge Lewis.　Greene superior court.
March 15, 1904.

*James B. & Noel P. Park,* and *Hamilton McWhorter,* for
Griffin et al.　*Samuel H. Sibley,* contra.

CANDLER, J.　On October 4, 1880, James M. Griffin was ap-
pointed guardian of the estate of Harriet A. Lane; he having filed
a petition to the court of ordinary of Greene county, in which he
alleged that Harriet A. Lane "is blind, and of hardly any educa-
tion because of said blindness, of no experience in business; and
consequently, though of sound mind and of the age of thirty-nine
years, utterly incapable of managing her estate." The petition
concluded with a prayer that he be appointed guardian of her
estate. The order of the ordinary was as follows: "Whereas ap-
plication has been made to this court by James M. Griffin, stating
that Harriet A. Lane, of said county, has a considerable estate,
and that owing to her blindness and limited education she is in-
competent to manage her estate, and that she has no guardian;
and whereas it appears that notice of application for the issuing of
a commission has been given in terms of law to inquire into the
inability of the said Harriet A. Lane to manage her own business
for the reasons given in the petition of said James M. Griffin, and
no objection having been made: ordered, that a commission issue
in said case." The jury appointed by the ordinary found that
"from blindness and limited education" she was not competent to
transact her business, and recommended the appointment of a
guardian. In accordance with this recommendation, it was duly
ordered that Griffin be appointed guardian of the estate of Harriet
A. Lane, upon his giving bond in the sum of fourteen thousand
dollars. On October 28, 1880, such a bond was given, signed by
Griffin as principal and Joseph McWhorter and J. O. Boswell as
securities. The condition of the bond was that Griffin should
" well and truly maintain and clothe said Harriet A. Lane accord-
ing to her circumstances, and . . take good and lawful care of
her person and property according to the laws of this State, and
. . annually make a just and true return of all his actings and
doings herein unto the said ordinary, and pay over all assets that
[might] remain in his hands when said guardianship [should]
legally terminate." Griffin continued as guardian until October
30, 1888, when Harriet A. Lane filed in the court of ordinary of

Greene county a petition reciting that he had put her on notice that he must surrender his trust at once; "and inasmuch as it is extremely difficult to get a person suitable to take charge of the property and give the bond required by law, and the probability of a frequent change in these uncertain times would make heavy expense on the corpus of the property, and feeling that she can through a competent agent manage it satisfactorily by having it invested in State bonds as soon as possible, she respectfully prays that the said guardianship be revoked and that the property be turned over to her or her authorized agent." Attached to this petition was the written consent and recommendation of Griffin as guardian, and that of Mary L. Collins, the sister and nearest of kin to Harriet A. Lane. The ordinary ordered that the prayer of the petition be granted upon Griffin making a full settlement with the attorney in fact of Harriet A. Lane. On January 7, 1889, the ordinary passed an order reciting that the final return of James M. Griffin, guardian of Harriet A. Lane, had remained of file the time required by law, and directing that it be allowed and admitted to record. Thereupon Griffin filed a petition, setting out that his guardianship had terminated and that he had made a full settlement with his ward, and praying for a final order discharging himself and the securities on his bond; and it was accordingly "ordered by the court that James M. Griffin be . . discharged from said guardianship, and that Joseph O. Boswell and Joe McWhorter, his securities, . . be released from all further liabilities on said bond as such securities." The record contains certified copies of the various returns of Griffin as guardian; and it appears that on November 5, 1888, B. F. Collins, as agent for Harriet A. Lane, and Harriet A. Lane herself signed the following receipt: "$6,445.88. Received of Jas. M. Griffin, my guardian, six thousand, four [hundred] and forty-five & 88/100 dollars, in full of all claims on him to August 5th, 1888. This is a settlement in full. November 5th, 1888." This paper was witnessed by John H. Bowles, a notary public.

Harriet A. Lane died in June, 1901, and Pope Collins, her nephew, was appointed administrator of her estate. The present suit was brought by him to the September term, 1902, of Greene superior court, against Griffin as principal, and Boswell and the executors of McWhorter as securities on the bond heretofore

mentioned.   The petition alleged various acts of fraud and mis-management on the part of Griffin as guardian, and claimed that the settlement between him and his ward, by which she undertook to release him from all further liability, was void for want of capacity in her to make such a settlement.   It alleged that in procuring this settlement Griffin grossly imposed upon his ward, who reposed the utmost confidence in him, and was, by reason of her bodily and mental affliction, unable to ascertain and discover the fraud that was being practiced upon her.   The petitioner waived discovery, and prayed, (1) that Griffin be required fully to exhibit his accounts as guardian; (2) that he fully exhibit the items of the pretended settlement; and (3) that the plaintiff have judgment on the bond in such sums as are shown to be due the estate of his decedent.   The defendants filed separate answers, and demurred generally and specially.   The petition was amended to meet the demurrers, and it was alleged, among other things, that the judgments of discharge granted the defendants by the ordinary were void for want of citation, service, or notice to any one preceding their rendition, and because Harriet A. Lane did not appear before the ordinary, the proceeding being entirely ex parte and therefore null and void.   Various items were set out wherein it was claimed that Griffin as guardian had made erroneous and fraudulent returns, creating an indebtedness from him to his ward in sums stated.   The points raised by the demurrers and the averments of the answers filed by the defendants will not be set out at this point, as they will clearly appear from the ensuing discussion of the legal questions involved in the decision of the case.   The case was referred to an auditor, the substance of whose report is contained in the closing paragraph thereof, as follows:   "Wherefore, in conclusion, I find the plaintiff has established by proof all the allegations in his declaration, the amendments thereto, and his replication to defendants' answers necessary to the recovery hereinbefore indicated; and that therefore he have judgment against all the defendants in the principal sum of $2,598.35, and $2,730.26 interest thereon at 7% per annum from the 6th day of August, 1888, to the 10th day of August, 1903, aggregating $5,328.61."   Exceptions of law and fact were filed to this report by both the plaintiff and the defendants.   The court passed upon all the exceptions, both of law

and fact, and declined to submit the exceptions of fact to a jury. All the exceptions were overruled, and the findings of the auditor were made the judgment of the superior court. The defendants except to the overruling of their demurrers, the refusal of the court to submit the exceptions of fact to a jury, the overruling of their exceptions of law and fact to the auditor's report, and to the decree as rendered. The plaintiff filed a cross-bill of exceptions, assigning error upon the overruling of his exceptions of law, the refusal of the court to submit the exceptions of fact to a jury, the refusal of his motion to recommit the case to the auditor for alleged errors in calculation, and the judgment finally rendered. Owing to the great number of the grounds contained in the various demurrers and exceptions of law and fact, no attempt will be made to pass upon these points separately. What follows decides, in our opinion, every material question at issue.

1. There is no provision of law in this State for the appointment of a guardian for a person sui juris solely on the ground of blindness and limited education. The Civil Code, § 2570, enumerates the classes of persons for whom guardians may be appointed by the ordinary, as follows: " Idiots, lunatics, and insane persons, and deaf and dumb persons when incapable of managing their estates, habitual drunkards, and persons imbecile from old age or other cause, and incapable of managing their estates." According to the petition of Griffin to have himself appointed the guardian of Harriet A. Lane, the latter was " of sound mind and of the age of thirty-nine years." The fact that she was blind, of limited education, and wholly lacking in business experience or ability, furnished no ground for the appointment of a guardian for her estate; and had she chosen, she might at any time have disregarded the appointment made by the ordinary and have assumed for herself the control and management of her property.

But, having gone into the court of ordinary and invoked its power of appointment of a guardian — having gained control of the property of this unfortunate woman through his successful efforts to have himself appointed guardian in a case where the law does not provide for the appointment of a guardian, can Griffin now be heard to deny the legality or validity of his appointment, or avoid the liability thereby voluntarily assumed ? And can his bondsmen, who were charged with knowledge of the

law, and who came forward to fulfil the conditions imposed by the ordinary as a prerequisite to his appointment as guardian, now escape liability on the bond by reason of the fact that the appointment was one not authorized by law? The first question is easily answered in the negative; for it is an elementary principle in the law of estoppel that a party will not be heard to deny the validity or legality of a judgment which he has invoked. A case directly in point is that of *Hines* v. *Mullins,* 25 *Ga.* 696, where it was held that a person who has been appointed guardian by a court of ordinary and has taken possession of the property and otherwise acted as guardian, is concluded from saying, when sued as guardian, that the ward did not reside in the county of the court, and therefore that the court was without jurisdiction to make the appointment. See also *Luther* v. *Clay,* 100 *Ga.* 236; *American Grocery Co.* v. *Kennedy,* 100 *Ga.* 462; *Vaughn* v. *Strickland,* 108 *Ga.* 660 (2); *Gentry* v. *Barron,* 109 *Ga.* 172; *Brown* v. *State,* 109 *Ga.* 570. As to the sureties, their liability is determined by the Civil Code, § 2554, where it is provided that even if the appointment of the guardian for any cause is declared void, they shall nevertheless be responsible on the bond for any property which may have been received by him by virtue of his appointment as guardian. It is idle, therefore, to further discuss the authority of the ordinary to appoint a guardian for Harriet A. Lane as affecting the liability of the obligors of the bond now sued on.

2, 3. The order of the ordinary granting the prayer of the petition of Harriet A. Lane that the "guardianship be revoked and the property turned over to her or her authorized agent," conditionally upon the guardian making a full settlement with her or her attorney in fact, can in no view be treated as a bar to an action against the guardian and the sureties on his bond. The only effect of this order was to terminate the guardianship and settle the relationship between guardian and ward for the future. It settled nothing whatever as to the state of the guardian's accounts, and was no adjudication of the faithfulness of his stewardship. See, on this subject, *King* v. *Hughes,* 52 *Ga.* 600. But it is contended by counsel for Griffin and his sureties that the order of January 7, 1889, by which the former was "discharged from said guardianship," and the latter were "released

from all further liability on said bond as such securities," operated as a complete bar to the present action. It appears, however, that the judgment relied on was preceded by no citation or notice of any character. This was not disputed. It was also alleged in the petition as amended that the order of dismission was procured by fraud, and that in obtaining it Griffin concealed from the ordinary the true state of his accounts. Under the Civil Code, § 2567, which is applicable alike to guardians of minors and of lunatics (see § 2580) letters of dismission to a guardian may be granted only on his compliance with the conditions therein named, one of which is the publication of his application for dis- charge once a week for four weeks in the public gazette where the legal notices of the ordinary's office are usually published. It is clear, then, that, the legal requisites for a valid discharge not having been complied with, the order of dismission can not operate to bar the rights of the ward in the present suit.

4. One for whom a guardian has been appointed on the ground of lunacy is legally incapable of contracting, even though restored to sanity, until the guardianship has been dissolved. Civil Code, § 3652. If this is true as to contracts generally, a fortiori is it true as to contracts between the ward and his guardian ; for the latter, by reason of his peculiar relationship to the ward, is in a position to more easily overreach and take advantage of him ; and until this relationship has been destroyed and the parties placed at arm's length, it would not be conscionable to uphold a contract made between them. In the present case, the receipt given by Harriet A. Lane to Griffin was dated November 5, 1888, while the final discharge of the guardian was not granted until January 7, 1889. It was contended by counsel for the plaintiff in the court below that the receipt and settlement were void for lack of capacity in Harriet A. Lane to make them, and for fraud on the part of Griffin in concealing from her the real state of his accounts. Regardless of this, however, we are of the opinion that even were she in all respects mentally sound, she could not, under the code section quoted, have given a valid receipt to her guardian so long as he continued to be her guardian, and that for this reason the paper relied on was not of itself a bar to the action.

5. It is argued, however, that after the lapse of fourteen years after the receipt by the ward and the discharge by the ordinary,

the plaintiff is barred by the statute of limitations. It is argued that under the Civil Code, § 2565, after four years from the date of the settlement with the ward, the latter could not reopen the account. The section referred to is as follows: "No final settlement made between the guardian and ward shall bar the ward, at any time within four years thereafter, from calling the guardian to a settlement of his accounts, unless it is made to appear that the same was made after a full exhibit of all the guardian's accounts, and with a full knowledge by the ward of all his rights." In the case of *Steadham* v. *Sims*, 68 *Ga.* 741, this section was, in effect, construed as meaning that in the absence of a full exhibit of the guardian's accounts, and full knowledge by the ward of his rights, receipts in final settlement of the guardian's account would be prima facie binding upon the ward only after the lapse of four years. This case was decided by a full bench, and is binding upon us; and any different meaning to the section that was given in the decision when that case was again before this court (74 *Ga.* 187) is not binding, for the reason that upon this branch of the case Chief Justice Jackson did not concur with the majority of the court. The principle announced in the earlier case strikes us as entirely sound. Ordinarily a receipt in full settlement of an account is binding, in the absence of fraud in its procurement, from its date. It could not have been intended that in the case of wards, around whom the law throws the most jealous protection, a limitation of four years should operate to bar the right to sue the guardian for money remaining due on a fraudulent settlement. The view urged by counsel for the plaintiff in the court below seems to us to set forth accurately the true law on this subject, viz., that section 2565 was designed to create a provision in favor of the ward, and not to bar his rights. It must be borne in mind that this is a suit on the guardian's bond — a sealed instrument, and that it is not barred until after the lapse of twenty years. It is the right of the defendants to plead in bar of the action the settlement between the guardian and his ward; and after four years from the date of that settlement it will be prima facie presumed that the ward is bound thereby — a presumption identical with that created in ordinary cases from the date of settlement. The ward, however, may then show that the settlement was procured by fraud, and thus rebut the presumption in its favor aris-

ing from the lapse of the statutory period.    There is no merit in the contention that this action is barred by the statute of limitations.

6 . It was urged on behalf of the securities that the receipt given by Harriet A. Lane " was an act of the creditor without their knowledge or consent, which increased their risk and released them from liability."    We confess our inability to follow this line of reasoning.    Granting that the receipt was given without their knowledge or consent, we are at a loss to understand by what process of logic it can be construed as increasing their risk.    If it was a valid, binding act, it entirely relieved them from any risk whatever; while if it was void from fraud, it had not the slightest effect upon their obligation.

7. For reasons which will now appear, we have not discussed the evidence appearing in the record as having been admitted on the hearing before the auditor.    On one point counsel for both sides are agreed, viz., that the exceptions of fact to the report of the auditor should have been submitted to a jury ; and both bills of exceptions assign error upon the refusal of the court to take this action.    The Civil Code, § 4595, provides that in all law cases where an auditor is appointed, exceptions of fact to his report shall be passed upon by the jury as in other issues of fact, while section 4596 provides that in equity cases only such exceptions of fact shall be submitted to the jury as are approved by the trial judge.    The question then arises, whether the present action was one at law or in equity.    In determining this question, the nature of the relief sought, rather than the form of the allegations of the petition, is important.    *Steed* v. *Savage,* 115 *Ga.* 97 ; *Fowler* v. *Davis,* 120 *Ga.* 443 (3).    The waiver of discovery by the plaintiff would indicate his intention to invoke the aid of a court of equity ; but this is a matter of form, rather than substance, at least so far as the determination of the nature of the suit is concerned.    The prayer for an accounting is appropriate either to an action at law or in equity.    *McLaren* v. *Steapp,* 1 *Ga.* 376 ; *Epping* v. *Aiken,* 71 *Ga* 686.    The prayer for judgment on the bond, however, fixes the suit as one at law ; and for that reason we are clear that the exceptions of fact to the auditor's report should have been submitted to a jury.

In view of the fact that the proper determination of the exceptions of law filed by the plaintiff depends in great measure upon

the determination of the issues of fact, which must be submitted to a jury when the case is tried again, it will not be necessary to pass upon the assignments of error in the cross-bill of exceptions upon the overruling of those exceptions of law. We will state in this connection, however, that nothing in this opinion is intended to preclude the plaintiff from urging the same points when the case is tried again. We simply leave the matter open, to be passed upon by the trial judge in the light of the rulings announced in the foregoing.

*Judgment on both bills of exceptions reversed. All the Justices concur.*