**Mrs. R. L. CLARK, as legal guardian for Shirley Tucker, Appellant,**

v.

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, Appellee.**

**No. 24602.**

United States Court of Appeals Fifth Circuit.

Dec. 19, 1967.

Rehearing Denied Feb. 13, 1968.

Marson G. Dunaway, Jr., Rockmart, Ga., for appellant.

Palmer H. Ansley, Atlanta, Ga., Henry A. Stewart, Sr., Cedartown, Ga., for appellee.

Before TUTTLE, GEWIN and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a summary judgment granted in favor of the appellant, in which the trial court granted a partial judgment against the former guardian of appellant's ward. Appellant's contention here is that the trial court erred in not granting a summary judgment in the full sum of $70,000.00, the amount of default judgment taken by her against the former guardian after notice to the surety company, and for penalty and attorneys' fees.

There are no issues as to the historical facts. On August 2, 1962, an automobile collision occurred between a vehicle driven by John P. Strother and a vehicle driven by Charles E. Tucker, Sr., who was accompanied by his family. In this collision Charles E. Tucker, Sr. received personal injuries and damages to his property. His wife, Shirley Tucker, was rendered mentally incompetent as a result of her personal injuries. Their son, Tony Tucker, age six months, was killed and their son, Charles E. Tucker, Jr. and daughter, Nancy Tucker, also received personal injuries.

The automobile driven by Strother had liability coverage with Hartford Accident & Indemnity Company. Subsequently, an attorney retained by Charles Tucker, Sr. to handle all these claims agreed with him on a settlement with Hartford Accident & Indemnity Company in the aggregate sum of $90,000. Since Shirley Tucker was mentally incompetent as a result of her injuries, in order to consummate the settlement of her claim for personal injuries and her claim for the death of her minor son, it was necessary for a guardian to be appointed.

On November 29, 1962, a petition was filed in the Court of Ordinary of Polk County, Georgia, by Charlie E. Tucker, Sr. alleging that Mrs. Shirley Tucker was of unsound mind and that a guardian should be appointed. A commission was appointed and thereafter on December 3, 1962, their return was filed finding that Mrs. Tucker was of unsound mind.

On December 4, 1962 Charles E. Tucker applied and was issued letters of Guardianship of his wife, Mrs. Shirley Tucker, alleging that as a result of the automobile collision of August 2, 1962, she was entitled to recover $35,000 from John F. Strother and/or Hartford Accident & Indemnity Company. On the same date, Tucker filed a bond in the amount of $70,000. The surety on the bond was defendant Great American.

On December 7, 1962, a petition was filed with the Ordinary of Polk County by Charles E. Tucker, Sr., setting out the facts of the claim for $35,000. On the same date an Order was entered by the Ordinary of Polk County approving the settlement and awarding the attorney one-third of the sum recovered as attorney's fees. Thereafter, on December 13, 1962, a release for $25,000 was executed by Charles E. Tucker, Sr. in favor of John P. Strother in extinguishment of the claim for injuries received by Mrs. Tucker and also a release for $10,000 was executed by Charles E. Tucker, Sr. in favor of John P. Strother in extinguishment of the claim of Mrs. Shirley Tucker for the death of her minor son, Tony. The consideration recited in the releases was paid.

About ten months later, on October 11, 1963, Mrs. Shirley Tucker, by and through her mother, Mrs. R. L. Clark as next friend, instituted three separate actions in three separate courts in Polk County, Georgia. These actions were as follows:

(a) Proceedings in the Court of Ordinary of Polk County, Georgia.

(b) Proceedings in the Superior Court of Polk County, Georgia.

(c) Proceedings in the City Court of Polk County, Georgia.

(a) A suit was instituted in the Court of Ordinary of Polk County, Georgia, alleging that Charles E. Tucker as guardian of Mrs. Shirley Tucker had wasted and mismanaged the property of Mrs. Shirley Tucker and was unfit for the trust as guardian. It was alleged that the lunacy commission which purported to examine into the mental condition and necessity of having a guardian appointed for Mrs. Shirley Tucker, did not examine Mrs. Shirley Tucker and did not have any evidence submitted to it with reference to the issues involved. It was contended that the Letters of Guardianship were void for this reason and that the purported settlement between Charles E. Tucker and John P. Strother purportedly approved by the Court of Ordinary was void. That proceeding was ultimately appealed to the Superior Court of Polk County and on September 4, 1964, at the direction of the court, the jury returned a verdict that the appointment of Charles E. Tucker, Sr., as guardian of Shirley Tucker, was void *ab initio* for failure of the commission appointed in the proceeding to examine Mrs. Shirley Tucker. Judgment was entered to this effect on September 9, 1964. Said verdict and judgment was unappealed and became final.

(b) A suit was filed in the Superior Court of Polk County against Charles E. Tucker, individually and in his capacity as guardian for Mrs. Shirley Tucker; Hartford Accident & Indemnity Company and John P. Strother. In Count One it was alleged that Hartford was the liability carrier for Strother and that defendants, Charles Tucker, Sr. and Hartford falsely and fraudulently entered into a plan to settle all of the Tucker claims for $90,000 of which only $35,000 was allocated to Shirley Tucker when in fact her claims were more valuable. It alleged that the subsequent lunacy commission, appointment of guardian and settlement of the claim in the Court of Ordinary was obtained by fraud and should be set aside. The relief sought in that Count was for the Court to restrain Charles Tucker, Sr. from interfering with Mrs. Clark, for a receiver to be appointed to take charge of the remainder of the funds held by Charles E. Tucker, Sr., as guardian of Shirley Tucker, and that custody of plaintiff be awarded to Mrs. Clark and that the set-

tlement of Mrs. Tucker's claim for $35,-000 be set aside and voided because of fraud.

In Count Two, damages against Strother for the injuries received by Mrs. Tucker and for the death of her minor son were sought. Count Three alleged that the appointment of the guardian and subsequent settlement of the claim of Mrs. Shirley Tucker was null and void because of the failure of the lunacy commission to examine Shirley Tucker.

On February 18, 1964, Charles E. Tucker, Sr., through his counsel, D. B. Howe, agreed to deposit all funds held by him as guardian of Mrs. Shirley Tucker in the registry of the Court and subsequently on March 13, 1964, "slightly in excess of $12,000" was so deposited and thereafter these sums were paid to Mrs. Clark on order of the court for the use and benefit of Shirley Tucker.

On November 26, 1965, plaintiff filed a Motion to Dismiss the action alleging that Mrs. R. L. Clark had been appointed guardian of the person and property of Shirley Tucker and had entered a covenant and agreement not to sue with Hartford and John P. Strother to settle her claim for personal injuries and for the death of her minor child for a total of $50,000. This settlement was approved by the Ordinary of Polk County, Georgia. The sum of $50,000 was received and the settlement was consummated in December, 1965.

(c) A suit was filed in the City Court of Polk County against Charles E. Tucker, individually and as guardian of Shirley Tucker and Great American. It recited that Shirley Tucker had received permanent injuries in an accident resulting in mental incompetence on her part and in the death of her child. It alleged that defendant Charles E. Tucker was appointed guardian of Shirley Tucker and that Great American issued a Guardian's Bond in the amount of $70,000. In essence, it charged that defendant Tucker, as guardian for Shirley Tucker, committed various acts which breached his duty as guardian. It was claimed that

he settled her more serious claims for pain and suffering and permanent injuries and for the death of her child for only $35,000, far below their actual value, while settling his personal claims for $51,000, an amount far in excess of their actual value. It also alleged that he squandered the $35,000 he did receive as settlement for her claims, committing Shirley Tucker to the State Hospital for mental patients at Milledgeville, Georgia, and spending part of her funds on personal activities, including several months in a bigamous marriage.

Subsequently, on February 24, 1964, defendant Great American was voluntarily dismissed, without prejudice, in a consent order signed by both parties.

On Tuesday, December 28, 1966, counsel for plaintiff sent a letter to Henry A. Stewart, attorney for Great American, stating as follows:

"This is to notify you as attorney of record for Great American Insurance Company * * * that the plaintiff will have no objection to a motion on behalf of Great American Insurance Company to have the dismissal vacated or to intervene in the action and make any defense that might be available at this time. I have discussed this with Mr. D. B. Howe, attorney for the remaining defendant Charles E. Tucker, Sr., and understand that he is also willing for your client to intervene in the action to protect its interests.

"As you know, this case is on the trial calendar as the number one case for trial Monday, January 3rd."

D. B. Howe, attorney for defendant Charles E. Tucker, Sr., talked with Great American's attorney Stewart over the telephone four or five days prior to trial, informing him that defendant Tucker was unavailable and that no defenses were available to be presented.

On Thursday, December 30, 1965, attorney Henry A. Stewart forwarded this letter to the defendant Great American's Atlanta office.

Defendant Great American made no official appearance in court when the case came to trial, on January 3, 1966.

At the trial, it was found that Defendant Charles E. Tucker, Sr. had no defense to present, and that he had absconded and could not be located by his own counsel. Evidence was presented and a verdict and judgment was rendered in favor of the plaintiff against defendant Charles E. Tucker, Sr., individually, and as guardian of Shirley Tucker, in the amount of $70,-000. This judgment was unappealed and became final.

Subsequently, on March 8, 1966, Mrs. R. L. Clark, as legal guardian of Shirley Tucker, instituted this suit in the City Court of Polk County, against defendant Great American for judgment in the above case, in the principal amount of $70,000, for $17,500 penalty and for $23,-333.33 as attorney's fees. The case was removed to this Court.

In the trial court, the plaintiff contended that having had full notice of the suit against its principal from its beginning, and having received actual notice prior to trial, that it should present any defenses available to it since its principal had no defenses to present, Great American is bound both as to liability and as to the amount of $70,000 represented by the judgment against Tucker, Sr., its assured.

Great American claims that it is not bound by the former judgment, since it was not a party to that suit at the time judgment was rendered; that, if bound as to liability on the bond, it may still litigate the *amount* of its liability in this action; it also contends that the plaintiff is taking inconsistent positions in having the guardianship set aside in one action and then suing on the guardian's bond in the present proceedings.

It being true that the guardianship for which Great American issued its bond was set aside as being void *ab initio*, it is necessary to ascertain the provisions of the Georgia law with respect to such situations.

Georgia Code Annotated, Section 49–225, provides:

"*Sureties bound through appointment of guardian void.* If the appointment of a guardian for any cause shall be declared void, his sureties shall nevertheless be responsible on the bond for any property which may have been received by him by virtue or reason of his appointment."

The Georgia courts have held that there are no exceptions to this rule. Griffin v. Collins, 121 Ga. 102, 106, 49 S.E. 827 (1904) and 125 Ga. 159, 163, 53 S.E. 1004 (1906).

We first test the claim of the appellant that the judgment against the guardian in the City Court of Polk County, the defendant having absconded, must be paid by the surety on account of its undertaking as surety for Charles E. Tucker, Sr. This obligation is expressed in the condition of the bond as follows:

"If the above bound Charles E. Tucker, Sr., who has been appointed by the Court of Ordinary of said county, guardian of the person and property of Shirley C. Tucker, shall in all things well and true to perform and discharge the duties of guardian of the said Shirley C. Tucker, as required by law, then this obligation to be void, otherwise to remain in full force and virtue."

The appellant claims that where a court having jurisdiction over the parties, and with notice to the surety, enters a judgment against a guardian, finding him liable for a breach of trust in the discharge of his duties as guardian, such a judgment is binding against a surety both as to the question of liability and as to the amount of the judgment. This appears to be the general rule. It is articulated in the first volume of the Georgia Supreme Court Reports, where in Brown v. Cheney, 1 Ga. 410, the Supreme Court quoted with approval the following language from 2 Ohio Reports 349:

"We take the distinction to be that where the securities have notice of the suit, and may or may not make defense, the judgment against the principal is conclusive against them. Where such notice is not given, the judgment against the principal is prima facie only." 1 Ga. 410, 413.

The many cases cited by the appellee in its brief stating that generally the surety is only prima facie bound by a judgment against its principal are cases in which it is not apparent that notice of the pendency of the action against the principal was brought home to the surety. Such cases are Bryant v. Owen, 1 Ga. 355; Bennett v. Graham, 71 Ga. 211; Gibson v. Robinson, 90 Ga. 756, 16 S.E. 969; and Fidelity and Deposit Co. of Maryland v. Rich, 122 Ga. 506, 50 S.E. 338. The case of Bryant v. Owen was typical of these cases. In that case the court said:

"The surety now before this court *was not a party* to the suit in equity; *he had no notice so far as the record discloses* of its pendency; Of Course *he was not heard* in his own defense in that suit. It is contrary to natural justice and also to all the analogies of the law, that one should be estopped by a decree *to which he was not a party, and of which he had no notice.*" (Emphasis added.)

Here, it is not disputed that the Great American Insurance Company had actual notice of the pendency of the suit having at one time been a party to it, and having thereafter been notified in writing by the two parties to the litigation that no defense would be filed on behalf of the guardian.

The fact, however, that in the ordinary case where a suit is brought against a guardian or other trustee, with notice to the surety, the surety is bound both as to liability and amount of such judgment does not answer the question before us on this appeal. Here, it is without dispute that the guardianship proceedings had been held to be void *ab initio*. In such circumstances, the statute quoted above modifies the general language of the bond itself. In order to give protection to those dealings with an ostensible guardian later held to have been acting without authority, the law says that, notwithstanding this guardianship is absolutely void the surety shall nevertheless be "responsible" for the

"* * * property which" was received by Tucker by reason of his appointment.

In passing on the question whether the bonding company was bound to pay the full $70,000 judgment without even any deduction for the $12,012.79, which had actually been turned over to the new guardian, as contended for by appellant, the trial court determined that the only property received by Tucker for which the bonding company would be "responsible" was the cash payment of $35,000 paid in settlement of the ward's claim against the tort feasor in the automobile accident.

The trial court said: "Had this guardianship not been declared void, it would follow that the broadly stated provisions of the bond would render Great American liable for the full judgment against Tucker. However, it is undisputed that the guardianship was declared void, and we must look again to Georgia Code Annotated, Section 49–225 (supra). As seen, it provides that the surety 'shall nevertheless be responsible on the bond for any property which may have been received by (the guardian).' Cases directly construing this section are nonexistent. However, it is strongly indicated that the liability, under such circumstances is limited only to the funds received by the guardian prior to the guardianship being declared void."

We conclude that the trial court's construction of the language "any property" is too restrictive, since, it is perfectly clear under Georgia cases, that a cause of action such as held by Shirley Tucker after the injury received by her would be a species of property in the hands of her guardian. Section 85–101, of the Georgia Code Annotated provides: "The term property is used not only to signify things real and personally owned, but to designate the right of ownership and that which is subject to be owned and enjoyed." We see no reason why this broad concept of property should not apply in construing the obligation of a bondsman in a guardianship proceeding. In fact, the language in the case of Grif-

fin v. Collins, 125 Ga. 159, 53 S.E. 1004, seems to indicate as much because it speaks of the duty of an administrator as to "funds *and property*." (Emphasis added.) See also Wayne v. Hartridge, 147 Ga. 127, 132, 92 S.E. 937.

Nevertheless, it becomes necessary for us to ascertain on the admitted facts before us, whether the judgment of $70,000 was necessarily based entirely on the failure of the guardian to be "responsible" for such property as was received by him. Here it is plain that as to two species of property, the guardian did respond and thus discharged his obligation to be "responsible" as to such property. These two items were the sum of $12,012.79, which he turned over to the new guardian for his ward, and the claim against the tort feasor Strother and his insurance carrier which was fully reinstated as property of the ward by the adjudication by the proper court that the settlement of that claim by Tucker was void and of no effect. Shirley Tucker, through her new guardian, then had a right to pursue that claim as if nothing had been done as to it. This right was exercised on her behalf and an additional $50,000 settlement was made (by way of the giving and receiving of a covenant not to sue) on account of Shirley Tucker's claims, without any requirement by Strother and Hartford, his insurance carrier, of an accounting for the $12,000 amount and whatever claims Shirley Tucker still had against her husband as her guardian and his bonding company for his defalcations.

Thus, we reach the same mathematical result that was reached by the trial court, but on slightly different grounds.

 We find that it was appropriate for the trial court to ascertain how much of the liability included in the $70,000 against Tucker represented a failure by him to "respond" for property which he had received by reason of his appointment as guardian. We think the court properly determined that the amount for which Tucker had failed to "respond" was the sum of $22,987.21, which he had misapplied, and that he had not failed to "respond" with respect to either the sum

of $12,012.79 or the claim against Strother which, by virtue of the state court's action, was still intact after his removal as guardian.

■ We agree that upon this complicated legal tangle that was presented to the Great American Insurance Company when faced with a demand to pay off the $70,000 judgment and in view of the fact that most of it was not, in fact, due there is no fact presented in these cross motions for summary judgment to warrant submission of this claim for penalty or attorneys fees to the jury.

The judgment is
Affirmed.