ABERCROMBIE, administrator, *vs.* SALISBURY, executrix.

1. A general exception that the court erred in refusing to allow a witness to testify to the sayings of a person not a party to the case is not good. It should appear what such sayings were, in order that the court might judge understandingly of their admissibility.

2. If the mental capacity of a party to a contract be in issue, it is not admissible to show his mental condition by showing the condition of the country at that time, and that some other person was depressed on account of it.

3. There was no error in granting a non-suit in this case.

(*a.*) Depression or impairment of mind which does not amount to an incapacity to handle property or transact business, is no ground for annulling a contract.

4. This action was barred by the statute of limitations, and there was no such fraud as will relieve it of that bar.

Evidence. Non-suit. Practice in Supreme Court. Before Judge WILLIS. Muscogee Superior Court. May Term, 1881.

Abercrombie, administrator of Anderson Abercrombie, brought trover against Salisbury, surviving partner of Warnock & Co., for one hundred and sixty-eight bales of

cotton, alleged to have been converted by them. Defend-
ant having died, his executrix was made a party. The
evidence is not very clear, but indicates substantially the
following facts: Prior to 1865 Abercrombie, deceased,
had the cotton sued for, on his plantation in a store-house.
To whom it belonged in 1865 is not clear, some of the
witnesses indicating that it had been sold by Abercrombie
to one Dillard; others conveyed the idea that the Con-
federate government was the real owner, Dillard being a
quarter-master, while one Merritt also claimed to be the
owner. In 1865 McGaughy, a brother-in-law of Merritt,
and apparently representing him, went to Abercrombie
and stated that he had found, and represented the real
owner of the cotton. Abercrombie seemed disinclined to
yield; but the matter was discussed between them for some
days, and at last Abercrombie sent the cotton to Colum-
bus to a warehouse. There it was deposited for Merritt,
and marked " L. M." and " L. M. M." (Merritt's name be-
ing L. M. Merritt). Warnock & Co. received all or part
of the cotton receipts, paid the storage, kept the bags
repaired, and were connected with the sale of a portion of
it. They apparently acted, however, for Merritt. The
suit was brought in 1876.

The court granted a non-suit, and plaintiff excepted.
For the other facts see the decision.

A. A. DOZIER; SMITH & RUSSELL, for plaintiff in error.

PEABODY & BRANNON, for defendant.

CRAWFORD, Justice.

E. H. Abercrombie, as the administrator of Anderson
Abercrombie, brought his action of trover against William
L. Salisbury, surviving partner of Warnock & Co., to
recover the value of one hundred and sixty-eight bales
of cotton which he alleged that the said firm had wrong-
fully converted to their use. The pleas of the defendant
were the general issue and the statute of limitations.

The plaintiff having closed his testimony, the defend-

ant moved a non-suit, which the court awarded, upon the ground that there was not sufficient testimony before the jury to support a verdict.

In the progress of the trial S. G. French, being about to testify to the sayings of one L. M. Merritt, was stopped on objection of defendant's counsel, and that evidence disallowed.

James Vernoy, another witness, in his testimony having stated that upon one occasion he saw Mr. Abercrombie, the deceased, and that he was very much depressed, and that he too felt about as badly as Mr. Abercrombie did, being next asked," What was it made you feel badly?" was not allowed to answer the question.

The awarding a non-suit, and the refusal to allow the testimony of the two witnesses, French and Vernoy, constitute the exceptions taken in this case.

1. The rejection of the sayings of Merritt to the witness French, may or may not have been admissible, according to what they were. It should have been stated just what the plaintiff expected to prove, so that its relevancy and admissibility could have been ruled upon by the judge. In the absence of the knowledge of what was offered, neither the court below, nor this court, could intelligently say whether the same was admissible or not ; the sayings of others than parties are generally inadmissible, and nothing having been stated to take it out of that rule, it was properly rejected.

2. As to the right of the plaintiff to insist upon the witness Vernoy's telling what it was that made him feel badly, as stated, it was to show that the condition of the country was such as to depress not only the deceased, but the witness as well, and that the results of the war preyed upon the mind of the deceased, and greatly depressed him. The right to show the condition of deceased's mind is undeniable, but to show it by the mode sought was unauthorized by all rules of evidence.

3. The third and great question in this case is whether a non-suit was properly awarded.

: It is clear that the plaintiff's intestate had in 1865 the possession and the right of possession to the cotton in controversy, and could have recovered it from any one who wrongfully converted it, and the question is, was there sufficient evidence to make a *prima facie* case of conversion against the defendant, so as to carry that issue to the jury?

. The cotton was delivered by the intestate after a refusal to do so for want of satisfactory evidence that the person calling for it was authorized to receive it, but being convinced of that fact consented to do so. He delivered it to the warehouseman in Columbus, by his son, who was his agent to manage and superintend his plantation. The delivery was by his own wagons and teams, and those of Mrs. Berry, his daughter, who resided in the house with him. He received the money for the delivery, and paid Mrs. Berry $2.00 a bale for that which she delivered. The son, in person, superintended the weighing and depositing of the cotton in the warehouse, and according to the testimony of one of the warehousemen, took receipts himself for a part of the cotton, and left a part with them.

· The cotton was received at the warehouse as the property of L. M. Merritt, and was marked with the letters "L. M." and "L. M. M." Thus, about the first of November, 1865, the possession was transferred to these bailees for Merritt, and in the absence of all proof to the contrary, it was Merritt's, and the conclusion irresistible that the defendant's firm only paid the storage and mended the cotton as commission merchants for Merritt, to whom Abercrombie himself had consigned it. There is no proof whatever that their dealing with it was tortious as against Abercrombie, or that they converted it, in anywise, wrongfully against him.

The deceased lived about two years after these occurrences; had besides the son living with him, four others who were grown, three of whom lived quite near him, and the fourth some five or six miles away.

It is said, however, that the plaintiff's intestate, had not sufficient capacity to transact any business, and that he could give no legal consent to the delivery.

Whilst the evidence shows that his mind was greatly impaired from age and other causes, yet it appears that his authority over his business was never questioned, nor interferred with by any member of the family, and that he directed it himself.   That he was *non compos mentis* was not pretended by a single witness.

4.  But assuming that the above is all wrong, and that there was a wrongful conversion of this cotton, it took place in November, 1865, and this suit was not brought until 1876, and the plea of the statute of limitations is relied upon as a bar to a recovery.

Abercrombie died February 22d, 1867, and an administrator was appointed April 4th, 1867.   In 1876 the first administrator having resigned, the present plaintiff was appointed and this suit commenced.   In order to take the case out of the statute of limitations, it is insisted that there was a fraud committed which prevents the bar.

After a most diligent search of this record from beginning to end, we have been unable to find any fact or circumstance, from November, 1865, to October, 1876, the discovery of which gave this right of action, after the four years had elapsed in which suit could have been brought. The removal of the cotton, its delivery, the condition of the intestate's mind, the conduct of McGaughy, the conversation between him and and the deceased, his two weeks' presence in the family of one of the intestate's sons, and in the neighborhood, that he claimed to represent the owner, that the intestate refused to believe it and demanded the papers, that he afterwards became satisfied and yielded the possession, that the intestate did not claim the cotton as his own, but said that he had sold it to Dillard; all these things were known in 1865 as in 1876.   Indeed there was nothing shown in the testimony which had not been known, except the connection of Warnock & Co.

with the cotton, in paying the storage and having it mended.

It was not claimed on the argument that there was any fraud in this. But admit that there was a fraud committed by McGaughy and Merritt in 1865, and for which Warnock & Co. were responsible, still, by the exercise of ordinary diligence, it could have been discovered. There was quite enough known to have prompted the necessary inquiry; ignorance of such a character will not prevent the statute of limitations from running, so says this court in the case of *Freeman vs. Craver,* 56 *Ga.,* 161, and by which we are bound.

Whilst this court will never impair the right of trial by jury wherever the facts make an issue, still, to enjoy that right, the party holding the affirmative must always have sufficient evidence to make a *prima facie* case, and shift the onus to the other side; ·if this be not done then a jury is unnecessary and non-suit is the proper judgment.

Judgment affirmed.