## BERNSTEIN *v.* FAGELSON.

The action in this case is one at law; and the Court of Appeals, and not this court, has jurisdiction to pass upon the assignments of error raised in the bill of exceptions.

No. 6434. APRIL 16, 1928.

Petition. Before Judge Humphries. Fulton superior court. June 17, 1927.

Edward D. Fagelson filed in Fulton superior court his petition against Frank Bernstein, in which he made these allegations: Bernstein is indebted to petitioner in the sum of $2500, besides interest from September 1, 1924, by reason of the facts which will now be stated. On January 2, 1922, Fagelson, Robert E. Katz, and Bernstein entered into a written agreement under which defendant purchased from petitioner and Katz all their right, title, and interest in a certain patent "for a welt refinisher." This contract recites that said patent rights were issued to Paul A. Ward and Katz, that the signature of Ward is not available at the present time for a written assignment of his interest in said patent rights, but that Fagelson and Katz believe that they might, with reasonable dispatch, obtain the release of the said Ward in and to said patent rights. Said contract then provides: "Now, therefore, the said Frank Bernstein hereby agrees that upon a proper assignment being made to him of all interest that the said Paul A. Ward now has in and to said patent rights, the said Frank Bernstein will pay therefor the additional sum of thirty-two hundred fifty ($3250) dollars to the said Edward D. Fagelson and Robert E. Katz." It was understood between the parties that of said sum petitioner was to receive $2500 and Katz was to receive the sum of $750. Ward obligated himself to assign in legal form said half interest to Independent Tool Products Company, all of the capital stock of which then belonged to Ward, Katz, and petitioner. Subsequently petitioner and Katz acquired the capital stock of Ward, and the Independent Tool Products Company, through its stock, is the property of petitioner and Katz. In order to secure the legal assignment of the interest of Ward in said patent, said company filed its petition in the superior court of Fulton County, and as a result thereof verdict was rendered requiring Ward to execute a formal transfer of his interest in said letters patent, so that said transfer might be properly recorded in

the patent office of the United States, and that a trustee be appointed to execute the necessary formal transfer of the interest of Ward in said letters patent to petitioner. Upon said verdict a decree was rendered, which recited that Ward was not present in court to execute this decree, and appointing one Hynds as trustee for him, and directing the trustee to execute on behalf of Ward the transfer of his interest in said letters patent to said company, its successors and assigns. Said assignment was made and duly recorded in the patent office at Washington. On August 7, 1924, petitioner notified defendant that he and Katz, through the Independent Tool Products Company, were then in position to transfer said half interest of Ward to the defendant in compliance with the terms of the above agreement, and stood ready to transfer the same as provided in said agreement. Petitioner now stands ready and offers to transfer to the defendant the entire half interest that stood in the name of Ward at the time of the execution of the contract above referred to, and now offers to have the same transferred upon compliance by the defendant with the obligations imposed upon him by the terms of said contract. Petitioner being in position, and ready and willing, to make the transfer provided for in said contract, the defendant is indebted to petitioner in the sum of $2500, with interest from September 1, 1924, for which petitioner prays.

By an amendment allowed on June 11, 1926, petitioner made these allegations: At the time the above contract was entered into it was the clear agreement between defendant, petitioner, and Katz, that of the sum of $3250 agreed to be paid by defendant as provided in said contract, $2500 was to go to petitioner, and $750 to be paid to Katz. At that time it was the clear understanding and agreement between defendant, Katz, and Fagelson, that both the legal title to a one-half interest in said patent, and the equitable title to the other half interest was in the Independent Tool Products Company, the capital stock of which was then owned jointly and entirely by Katz and petitioner, and that compliance with said contract, with reference to the half interest which then stood in the name of Ward on the records of the patent office, would be fully met by securing the legal transfer of the title of said Ward to the said Independent Tool Products Company, and the transfer of said title by said company to the defendant. Said defendant fully

complied with said contract in connection with the purchase of said additional half interest in said patent, in so far as Katz was concerned, by making a settlement with Katz by which he received from Katz a transfer of all the interest that Katz had in said patent, and having transferred to him by Katz the shares of stock of said company that previously belonged to Katz. The only parties interested at this time in the Independent Tool Products Company, as stockholders, and the equitable interest of said company in said half interest in said patent, are petitioner and defendant, said defendant having become subrogated to and having acquired the title of Katz in said patent and in the capital stock of said company. On August 7, 1924, petitioner advised defendant that he was then in position and stood ready to comply with the provisions of said contract, to which notification petitioner received no reply. On October 27, 1924, petitioner, through his attorneys, again wrote to said defendant, calling attention to its letter of August 7, 1924, and advising him that petitioner was in position to transfer said interest to defendant in accordance with the terms of the contract. To these letters petitioner received no direct reply, but his attorneys were advised by the Boston attorneys of the defendant that they would look into said matter, and would take the matter up later. Defendant made no further communication with petitioner or his counsel in reference to compliance with said contract; and petitioner avers that said conduct on the part of the defendant constitutes a refusal of said defendant to comply with the terms of said contract, and amounted to a breach thereof on the part of the defendant, so that the right of petitioner to institute this suit fully accrued.

The defendant demurred generally and specially. On June 24, 1926, the judge sustained the grounds of said general demurrer, with leave to amend within twenty days, but made no ruling upon the grounds of special demurrer. On July 12, 1926, petitioner amended and made these allegations: The defendant is connected with certain manufacturing enterprises engaged in manufacturing and distributing shoe accessories. He became interested in the patent hereinbefore referred to. He ascertained that said patent was the property of the Independent Tool Products Company, a Georgia corporation, owned and controlled by petitioner and Katz, that said company was then engaged in manufacturing patent welt

refinishers and placing them upon the market; and that said company had acquired a certain amount of assets in connection with said patent. He desired to acquire the ownership of said patent device and of said letters patent, and entered into negotiations with petitioner and Katz. Petitioner and Katz discussed with defendant the matter of the sale to him of the assets of said company, including said patent letters. At that time petitioner and Katz explained to Bernstein that, while the Independent Tool Products Company owned the entire interest in said letters patent, the legal title to an undivided half interest therein stood in the name of Ward, and that the Independent Tool Products Company had not yet been able to secure from Ward the formal transfer in order to place the entire legal title of said patent in said company. The defendant thereupon agreed with Katz and petitioner to take a transfer of the undivided half interest of said letters patent then standing in the name of said company, and to pay petitioner and Katz the sum of $3000 therefor, which part of said trade was consummated by the payment of part cash and the execution of notes to petitioner and Katz respectively for each of their interests therein. It was a fact at that time, and so understood by all of the parties, that petitioner and Katz equally owned the entire capital stock of said company, and that as the sole stockholders of said company they would make such transfer of such interest in said letters patent as should be called for by the defendant or his attorneys. At the same time petitioner and Katz agreed to deliver to said defendant, within sixty days, all of the assets and equipment belonging to and being the property of said company, for which the said Bernstein agreed to pay to petitioner and Katz the additional sum of $1000. Within the time specified in said agreement petitioner caused to be shipped to Bernstein all of the assets and equipment of the Independent Tool Products Company; whereupon Bernstein became obligated to pay to petitioner and Katz said additional sum of $1000. While defendant, under the terms of said agreement, was to acquire the entire assets and equipment of the Independent Tool Products Company and to get a transfer of the one-half undivided interest in said letters patent, then legally standing in the name of said company, it was understood and agreed that the above-named consideration did not include the purchase-price of the other half interest in said letters

patent, the equitable title to which was in the Independent Tool
Products Company but legal title to which was in Ward. It was
agreed that if petitioner and Katz would put themselves in posi-
tion and deliver the legal title to the one-half undivided interest
then outstanding in the name of Ward, defendant was to pay peti-
tioner and Katz the additional sum of $3,250. It was agreed
between all of the parties that the legal title to said letters patent
properly belonged in the name of the Independent Tool Products
Company, that Fagelson and Katz were the sole stockholders
therein, and they were therefore able to have such transfers made
by said company as would be necessary in order to place the legal
title to said letters patent in the defendant. Petitioner, Katz, and
Bernstein having agreed upon the terms and conditions of said
purchase and sale, defendant had the former two to go with him
to the office of his lawyer in Boston, Massachusetts, in order that
said agreement might be set out in writing. The facts of the pur-
chase and sale, as above set forth, were submitted to the defend-
ant's attorney, who drew the agreement of January 2, 1926, more
fully referred to in the original petition. Said agreement was
partially consummated, petitioner and Katz causing to be trans-
ferred to the defendant the undivided interest in said letters
patent which then stood in the name of the Independent Tool
Products Company, and Bernstein delivering to petitioner and
Katz certain money and notes in compliance with the terms of
his agreement to pay $3,000 therefor. Petitioner caused to be
delivered to the defendant the other assets and equipment of the
Independent Tool Products Company, for which the defendant
agreed to pay the additional sum of $1,000. Petitioner caused the
Independent Tool Products Company to institute a proceeding in
the superior court of Fulton County, for specific performance
against Ward, and through said proceedings secured a verdict and
decree in favor of said company, finding that it was entitled to a
transfer from Ward of the other one-half undivided interest in
said letters patent, and the appointment of a commissioner by
whom said transfer was formally made, and secured the recording
in the patent office at Washington of said transfer from Ward to
said company. All that was necessary to be done in order to have
transferred to the defendant the one-half interest in said letters
patent was to have the Independent Tool Products Company make

such transfer, as originally contemplated between the parties when the contract between them was entered into on January 2, 1923. Petitioner is the owner of one-half of the capital stock of Independent Tool Products Company. The defendant is the owner of the other one-half of the capital stock of said company, having settled with Katz and taken from him a transfer of his stock in said company. Petitioner and defendant being the sole owners, controlling said company, there is no legal obstacle in the way of the transfer of the one-half undivided interest in said letters patent to the defendant. Defendant has already acquired all of the assets of said company, and it has no assets except the one-half undivided interest in said letters patent, to which defendant is entitled upon payment to petitioner of the purchase-price agreed upon and above set out. Petitioner not only stands ready to vote his capital stock in said company in favor of a formal transfer by it of the one-half interest in the said letters patent to the defendant, but stands ready and offers, upon compliance by said Bernstein with his obligation to pay to petitioner the amount herein sued for, to transfer to him all of petitioner's shares of stock in said company.

To the petition as thus finally amended the defendant renewed his two demurrers, upon all of the grounds thereof. He specially demurred to various allegations in the last amendment, on the ground that the matters set out therein were conclusions of the pleader and were surplusage.

The judge overruled all of the grounds of demurrer to the petition as finally amended, and the defendant excepted.

*J. N. Johnson,* for plaintiff in error.

*Dorsey, Howell & Heyman,* contra.

HINES, J. (After stating the foregoing facts.) This case was made returnable, by the bill of exceptions and the certificate thereto, to the Court of Appeals. The Court of Appeals by order transferred the case to this court, upon the ground that it is not a mere suit at law, but amounts to an equitable petition for specific performance, of which this court alone has jurisdiction to pass upon the assignments of error made in the bill of exceptions. This court has exclusive jurisdiction of all writs of error brought to review judgments of the superior courts "in all equity cases." Acts 1916, p. 19; 10 Park's Code Supp. 1922, § 6502. Specific per-

formance of contracts is a branch of equity jurisprudence; and a petition which seeks to compel a party to a contract to specifically perform it is a case in equity. Does the petition make such a case? Whether a petition is based upon an equitable or a legal cause of action depends upon the nature of the relief sought, as shown by the prayers, which indicate whether the alleged cause of action is intended by the pleader as founded upon equitable or legal principles. *Steed* v. *Savage*, 115 *Ga.* 97 (41 S. E. 272). To make a case in equity, the allegations of the petition must be applicable to the equitable relief prayed, and there must be a prayer either for the specific relief prayed, or for general relief. *Copeland* v. *Cheney*, 116 *Ga.* 685 (43 S. E. 59). Whether a petition states an equitable or a legal cause of action depends upon the relief prayed. *Fowler* v. *Davis*, 120 *Ga.* 442 (47 S. E. 951). In determining whether a case is one at law or in equity, the nature of the relief sought, rather than the form of the allegations of the petition, is important. *Griffin* v. *Collins*, 122 *Ga.* 102, 110 (49 S. E. 827). The allegations and prayers of the petition in the instant case do not raise a question of specific performance. *Pound* v. *Smith*, 146 *Ga.* 431 (2) (91 S. E. 405). The petition does not specifically allege that the plaintiff is seeking specific performance by the defendant of the contract sued on. The implication that the plaintiff is seeking such relief does not arise from the allegations of the petition. The prayers of the petition are exceedingly skimpy. The plaintiff only prays for a judgment against the defendant for $2500, and for process. In view of its allegations and its prayers, the petition in this case, when properly construed, is an action by the plaintiff to recover from the defendant damages for breach of the written contract sued on. The fact that an undivided half interest in the patent involved would have to be transferred by the Independent Tool Products Company to the defendant, and that such transfer might have to be authorized by the vote of its stockholders, the sole stockholders being the plaintiff and the defendant, is not alleged for the purpose of requiring the defendant, as a stockholder, to join with the plaintiff in authorizing such transfer, but is made for the purpose of showing the ability of the plaintiff, with the aid of the defendant, to have the company make such transfer, or to excuse the plaintiff for non-performance of his obligation to have said one-half interest in said patent transferred

to the defendant, and to place the blame upon him, if he fails to join the plaintiff in authorizing and having the company to make such transfer. In other words, this allegation in the petition is made to show the ability of the plaintiff, with the defendant's aid, to perform, or as an excuse for the failure of the plaintiff to have this interest in the patent transferred to the defendant, on the defendant's default in this matter, the plaintiff averring his willingness to authorize the company to make the transfer.

At most the petition states some facts which squint at equitable relief, and other facts which the pleader claims entitle him to legal relief. In these circumstances the character of the action will be determined by the nature of the prayers of the petition. There being no prayer for any equitable relief, and there being a prayer for a money judgment against the defendant for breach of the contract sued on, the action will be held to be one at law and not in equity. *Mulherin* v. *Neely,* 165 *Ga.* 113 (139 S. E. 820). So we are of the opinion that the petition in this case makes a case at law. It follows that the Court of Appeals has jurisdiction to determine the questions raised by the bill of exceptions, and that this court is without jurisdiction. The case is therefore remanded to that court.                    *All the Justices concur.*