WOODCLIFF GIN COMPANY *et al. v.* KITTLES *el al.*

No. 8345. OCTOBER 17, 1931. REHEARING DENIED NOVEMBER 14, 1931.

*Oliver & Oliver* and *O. Frank Brant,* for plaintiffs in error.

*T. J. Evans,* contra.

HINES, J. Grace E. Kittles and May A. Kittles, the latter as executrix of the will of W. H. Kittles, filed their petition against the Woodcliff Gin Company and H. H. Parker, the latter as president of the company, to compel the defendants to transfer to them on the books of said company 21 shares of its capital stock and to issue to them certificates in their own names therefor. They based their right to this relief upon the following facts: H. H. Parker was the original owner of these shares of stock, which were represented by two certificates, one for 10 shares and the other for 11 shares. Parker transferred said certificates in blank and pledged them to Barrett & Co., as security for an indebtedness due by him to said firm. Barrett & Co. were adjudged bankrupts, and said certificates of stock were included in the assets of the firm. In due course these certificates were sold by the trustee in bankruptcy of Barrett & Co., on August 23, 1924, to P. R. Kittles for a valuable consideration, under an order of the referee in bankruptcy, at private sale, of which due and legal notice was given. P. R. Kittles sold a half interest in the 21 shares of stock to A. R. Roberts, Kittles retaining a half interest therein until the time of his death on January 18, 1926. On March 20, 1928, the Citizens & Southern Bank, executor of the will of Peter R. Kittles, and Grace Evans

Kittles, widow of the testator, by bill of sale conveyed to Eva P. Kittles the undivided half interest of the testator in the 21 shares of stock. This bill of sale recited that it was made by virtue of the power and authority conferred upon the makers in the ninth item of the will of the deceased, as well as in consideration of $100. The bill of sale further conferred upon the grantee a power of attorney in blank, irrevocably authorizing the transfer to her of all right in the stock, and the substitution of one or more persons with full power to make said transfer. It further recited that it was the intention of the executor and Grace Evans Kittles to transfer and assign to the grantee all the right, title, and estate enjoyed by the testator in said stock at the time of his death. On March 29, 1928, Eva P. Kittles, in consideration of $10 and other good and valuable considerations, quitclaimed to W. H. Kittles all her right, title, interest, claim or demand in certain property including the above 21 shares of stock.

May A. Kittles is the duly appointed and qualified executrix of the will of W. H. Kittles. A. R. Roberts conveyed and delivered his half interest in said 21 shares of stock to Grace E. Kittles, who is now the owner thereof. The interests of Grace E. Kittles, and May A. Kittles as executrix, are identical, each claiming a common undivided half interest in said 21 shares of stock. Petitioners made demand upon the Woodcliff Gin Co. through its president, H. H. Parker, to transfer said certificates of stock on the books of said company into their names, and for the issuance to them of new stock in said company upon the surrender of said certificates of stock now held by them. Petitioners tendered said stock to be surrendered upon the issuance of new certificates, but Parker, as president of said company, refuses to allow new stock to be issued. Parker continues to use said stock, voting said stock at meetings of stockholders, and drawing and using the dividends declared, and refuses to account to petitioners therefor and to allow them to exercise any control over the stock or examine the books of said corporation for the purpose of determining what their rights may be as shown by its books. They pray that Parker be restrained from disposing of or voting said stock, and from interfering with them in the exercise of their rights as stockholders; that R. E. Parker as secretary and H. H. Parker as president be required to issue new shares of stock in lieu of the old stock standing in the name of H. H. Parker.

Parker in his answer alleged that the indebtedness which said stock was pledged by him to Barrett & Co. to secure had been paid, prior to their bankruptcy, by the sale of cotton which the firm held as his factors. He went to Augusta for the purpose of obtaining this stock, but at that time Barrett & Co. had been adjudged bankrupts and the assets were in the hands of the United States court, and defendant was unable to get his stock. He denied that the sale of this stock by the trustees was valid, for the reason that he had no notice thereof, and that if he had had notice he would have defended against the sale. He set up that the sale of the stock by the trustee in bankruptcy was void, because the indebtedness to secure which the stock had been pledged had been paid. In its answer the Woodcliff Gin Co. alleges that it is not in position to transfer this stock, as is claimed by Parker as his individual property; but respondent is willing to transfer it should it be found that it is the stock of petitioners.

On the trial the plaintiffs introduced evidence tending to prove the allegations of their petition. They introduced the bill of sale from the executor of P. R. Kittles and his widow to Eva P. Kittles, containing the recitals above set out. They introduced evidence tending to show that Parker was indebted to Barrett & Co. on his cotton account at the time this stock was sold by the trustee in bankruptcy, and that the proceeds of the sale of the stock were applied to the indebtedness of Parker to that firm. They further proved that the certificates of stock were sold at private sale, and that Parker was notified of such sale. They introduced also the quitclaim deed from Eva P. Kittles to W. H. Kittles, and the certificates of stock in question, transferred by H. H. Parker in blank, with powers of attorney authorizing the transfer thereof.

H. H. Parker testified that he pledged the certificates of stock to Barrett & Co., to secure his indebtedness on his cotton account with the firm. He introduced a writing signed by Barrett & Co., acknowledging receipt of the certificates of this stock as collateral security, reciting that on payment of his account in full these certificates were to be returned to him. He also introduced certain account-sales of cotton, and an account-current between him and Barrett & Co., tending to substantiate his claim that the debt the stock was pledged to secure had been paid. Defendants introduced the schedule of assets of Barrett & Co. in the bankruptcy

proceeding; and these certificates of stock were not embraced therein. Thomas Getzen, for plaintiffs, testified that he was secretary and office manager of Barrett & Co. prior to their bankruptcy; that these certificates of stock came into the possession of the trustee in bankruptcy as assets of the firm, and were sold by the trustee under authority of the court and applied on the indebtedness of Parker to the firm; and that the reason the stock was not listed among the assets of Barrett & Co., when they were adjudged bankrupts, was because only the company's accounts were listed in the schedules, and not securities pledged to secure the individual accounts.

The trial judge directed a verdict for the plaintiffs. The defendants moved for a new trial on the general grounds, and upon certain special grounds to which reference will be made hereinafter. The judge overruled the motion, and the defendants excepted.

■ In their motion for new trial the defendants allege that the judge erred in refusing to permit A. R. Roberts, a witness for the plaintiffs, to answer a question propounded to him by their counsel on his cross-examination. P. R. Kittles purchased the 21 shares of stock involved in this case from the trustee in bankruptcy of Barrett & Co. He sold a half interest in these shares to Roberts, who conveyed and delivered his half interest to Grace E. Kittles, one of the plaintiffs, who is now the holder thereof. On cross-examination counsel for defendants propounded to Roberts this question: "How much did you sell the stock to Mrs. Kittles for?" Counsel for the plaintiffs objected to the witness answering this question, on the ground that the evidence sought thereby was immaterial in this litigation. Counsel for the defendants informed the court that Roberts, if permitted to answer this question, would testify that he was not paid anything by Mrs. Grace E. Kittles for the half undivided interest conveyed by him to her. Defendants insist that the court erred in refusing to admit this testimony, for the reason that a jury would have been authorized therefrom to conclude that there was a lack of good faith on the part of Roberts in transferring this stock and a lack of good faith on the part of Mrs. Grace E. Kittles in accepting the transfer. We think the testimony sought from this witness was irrelevant. The good faith of Roberts and Mrs. Kittles in this matter was not an issue involved in the trial. Whether Roberts had been paid

anything by Mrs. Kittles for his half interest in these shares would throw no light upon the issues involved in this case. For this reason, the court did not err in refusing to let this witness answer the question propounded to him.

■ At the conclusion of the evidence in this case, counsel for the plaintiffs moved that the court direct a verdict in their favor and against the defendants, upon the ground that the undisputed evidence showed that the stock certificates had been in the possession of Mrs. Grace E. Kittles, and Mrs. May A. Kittles as executrix, and their predecessors in possession, for a period of more than four years prior to the institution of this suit, and that the defendants were therefore barred by the statute of limitations from claiming that the stock was the property of Parker and was not the property of plaintiffs, which motion was sustained, and a verdict in favor of the plaintiffs and against the defendants was directed by the court. The defendants allege that this direction in favor of the plaintiffs was illegal, because the plaintiffs failed to show title in Mrs. May A. Kittles as executrix of the will of W. H. Kittles. They assert that this is so because the petition alleged that in pursuance of the administration of the estate of P. R. Kittles his remaining half interest in these 21 shares of stock was sold under the provisions of his will, at which sale W. H. Kittles was the purchaser of said interest, which he continued to own until the time of his death on the first day of April, 1928; that this allegation of the petition was not supported by any proof whatever, as no sale was shown by the evidence to have been made by the estate of P. R. Kittles to W. H. Kittles, and that the only evidence introduced to show title in Mrs. May A. Kittles as the duly appointed executrix of the will of W. H. Kittles was the recital in the assignment from the Citizens & Southern Bank as the executor of the will of P. R. Kittles, and from Grace Evans Kittles, the widow of the testator, that by virtue of the power and authority conferred upon them in the ninth item of the will of Peter R. Kittles, as well as in consideration of the sum of $10, the makers had bargained, sold, assigned, and transferred unto Eva P. Kittles an undivided half interest in said 21 shares of stock, outstanding in the name of H. H. Parker on the books of the company, which had been duly indorsed in blank by Parker, Peter R. Kittles and A. R. Roberts each being the owner of an undivided half interest in

this stock at the time of the death of Peter R. Kettles. Movants assert that as the will of Peter R. Kittles had not been introduced in evidence, and as there was no other evidence showing the divesting of the half undivided interest in these shares out of the estate of Peter R. Kittles into Mrs. May A. Kittles as executrix of the will of W. H. Kittles, there was no evidence to show title into May A. Kittles as such executrix of an undivided half interest in these shares of stock. The defendants allege that the court erred in holding that sufficient evidence had been introduced to show title to an undivided half interest in said 21 shares of this stock in Mrs. May A. Kittles as the executrix of W. H. Kittles; and further allege that there was not sufficient evidence to authorize the court to direct a verdict for the plaintiffs over the objection of counsel for the defendants, and that this error entitles them to a new trial.

It is true that in the tenth paragraph of their petition plaintiffs allege that in the administration of the will of Peter R. Kittles an undivided half interest in these 21 shares of stock was conveyed to W. H. Kittles. This allegation is not sustained by the evidence, which discloses that the half interest of Peter R. Kittles in these shares was transferred by his executor and by his widow to Eva P. Kittles, who in turn transferred the same to W. H. Kittles. To this extent the allegations of this paragraph of the petition and the proof did not agree. The record does not disclose that the defendants objected to the evidence showing the transfer of the half interest of Peter R. Kittles in these shares to Eva P. Kittles, and from the latter to W. H. Kittles. The variance between the allegation and the proof upon this point was not so material as to require the grant of a new trial. *Bales* v. *Griffin,* 3 *Ga. App.* 97 (59 S. E. 316); *S., F. & W. Ry.* v. *Barber,* 71 *Ga.* 644, 648; *Folsom* v. *Lewis,* 85 *Ga.* 146 (11 S. E. 606); *Central Railroad &c. Co.* v. *Hubbard,* 86 *Ga.* 623 (4) (12 S. E. 1020).

It is further urged by the defendants that the plaintiffs failed to make out a case entitling Mrs. May A. Kittles as executrix to a verdict, for the reason that plaintiffs did not introduce in evidence the will of Peter R. Kittles. It is true that the bill of sale from the executor of the will of P. R. Kittles, and from his widow, conveying the half interest of the testator in these shares, recites that it was made by virtue of the power and authority conferred upon the makers by the will of the testator. This suit was not brought

by the plaintiffs to recover from the defendants these certificates of stock. It was brought for the purpose of compelling the Woodcliff Gin Company to transfer these shares of stock from H. H. Parker to them, and to issue to them, in their own names, certificates of stock in lieu of the transferred certificates held by them, which they offered to surrender for this purpose. If this suit had been brought to recover this stock from the defendants, one of the plaintiffs claiming title to a half interest therein under a bill of sale and transfer from an executor and the widow of the testator, the bill of sale reciting it was made under a provision in the will of the testator, it would have been incumbent upon them to produce the will in order to establish title in themselves. In order to show title by a bill of sale or transfer of certificates of stock of his testator, made by the executor and the widow of the testator, which purports to be made under the provisions of the will of the testator, it is incumbent upon the petitioners asserting title under such bill of sale to produce the will. It is not sufficient that this bill of sale recites that it was made under the provisions of the will. *Clements* v. *Henderson,* 4 *Ga.* 148-156 (48 Am. D. 216) ; *Yahoola River &c. Co.* v. *Irby,* 40 *Ga.* 479; *Waller* v. *Hogan,* 114 *Ga.* 383 (40 S. E. 254) ; *Brown* v. *Madden,* 141 *Ga.* 419 (81 S. E. 196) ; *Pendergrass* v. *Hardman,* 157 *Ga.* 579 (121 S. E. 808) ; *Durden* v. *Phillips,* 166 *Ga.* 689 (144 S. E. 313).

But the plaintiffs rely on prescriptive title in themselves to these certificates of stock, by reason of possession thereof by themselves and their predecessors in possession for a period of more than four years before the bringing of this suit. Stock in a corporation in this State is personal property. Civil Code (1910), § 3646; *People's National Bank* v. *Cleveland,* 117 *Ga.* 908 (44 S. E. 20) ; *Greene County* v. *Wright,* 126 *Ga.* 504 (54 S. E. 951) ; *Hamil* v. *Flowers,* 133 *Ga.* 216 (65 S. E. 961). Adverse possession of personal property for four years or longer gives a title by prescription in this State. Civil Code (1910), § 4172. It is under this code section that the plaintiffs prescribe against the claim of title by Parker. The plaintiffs, prior to the institution of this suit, had acquired possession of these certificates of stock. As in the case of adverse possession of realty, adverse possession of chattels for the statutory period operates not merely to bar the remedy but vests absolute title in the possessor, which is equally available for

attack or defense. 2 C. J. 287, § 647. Continuous possession in any one person is not necessary for the acquisition of title by adverse possession. On the contrary, it is a rule of almost universal application, that, if there is a privity between successive occupants holding adversely to the true title continuously, the successive periods of occupation may be united or tacked to each other to make up the time of adverse holding prescribed by the statute as against such title. 2 C. J. 82, § 66. An inchoate prescriptive title may be transferred by a possessor to a successor, so that the sucessive possessions may be tacked to make out the prescription. Civil Code (1910), § 4178. This suit, as we have seen, was brought against the corporation and its president, to compel a transfer of this stock to petitioners, and to issue to them therefor certificates of stock in their own names. The plaintiffs had previously acquired possession of these certificates, with blank assignments and powers of attorney to transfer the stock represented by the certificates on the books of the company, the assignments and powers of attorney authorizing the transfer of the stock being signed and indorsed in blank by H. H. Parker. Shares of stock are sufficiently transferred as between the transferor and transferee by the delivery of the certificate with a blank assignment and power of attorney to transfer the stock on the books of the company, signed and indorsed on the back thereof. 14 C. J. 675, § 1046, note 82, and cit. This is the method by which sales and transfers of stock are usually made. Id. note 83, and cit. The holder of certificates of stock so indorsed has prima facie a good title to the shares. Id. note 86, and cit. Such a transfer prima facie authorizes the holder to fill in such blanks and procure the legal title by a transfer on the books of the company, or to complete a sale by delivery of the certificate and transfer of the stock; and this power is not limited to the person to whom the certificate is first delivered, but inures to each bona fide holder into whose hands the certificate and power may pass, each successive holder having the right to fill up the blanks, and execute the power, or cause it to be executed, whenever the protection of his own interests may require it. The power is not exhausted by the first use to which it is applied, nor revoked by the death of the party giving it, but, unless surrendered to the person who gave it, or canceled, continues in force until its execution by an actual transfer of the shares to which it relates; and the validity of neither

the power nor the transfer is at all affected by the number of the persons through whose hands the certificate and power, since their first delivery, may have passed. Id. notes 91, 92, 93, 94, 95, 96, 97, and cit.

When the plaintiffs produced these certificates of stock with blank assignments and powers of attorney to transfer these shares on the books of the company, signed and indorsed by H. H. Parker, to whom the shares were originally issued, they prima facie showed a good title to the shares. Such a transfer prima facie authorized the plaintiffs to fill in such blanks and secure the legal title to the shares by a transfer on the books of the company. Proof of the above facts by the plaintiffs made out a prima facie case which entitled them to recover. When this prima facie case was made by the plaintiffs, the defendants undertook to rebut the same by showing that Parker had endorsed and transferred these shares to Barrett & Co., to secure an indebtedness due by him to them; that this debt had been paid by him before Barrett & Co. went into bankruptcy; and that as the debt had been paid, the sale of the stock by the trustee under a pledge thereof by Parker to Barrett & Co., to secure said debt, was illegal and void and passed no title to P. R. Kittles, under whom plaintiffs claimed title. In reply to this contention the plaintiffs set up that Parker's right to these certificates of stock was barred by the statute of limitations, and that plaintiffs had acquired a title thereto by prescription growing out of adverse possession of these certificates of stock by themselves and their predecessors in title for a period longer than four years prior to the institution of this suit. All suits for recovery of personal property must be brought within four years after the right of action accrues, and not thereafter. Acts 1855-56, p. 233; 3 Park's Code, § 4496(a) ; *Abercrombie* v. *Salisbury,* 67 *Ga.* 734; *Hicks* v. *Moyer,* 10 *Ga. App.* 488 (3) (73 S. E. 754) ; *Hill* v. *Fourth National Bank,* 156 *Ga.* 704 (2) (120 S. E. 1). It is true that the provision of the act of 1856, just cited, has been left out of all the Codes of this State; and this fact furnishes support to the proposition that there is not now in this State any statute fixing a period of limitation to suits for the recovery of personal property (*Blocker* v. *Boswell,* 109 *Ga.* 230, 34 S. E. 289), but in *Hicks* v. *Moyer,* supra, the Court of Appeals held that this provision of the act of 1856 was left out of the

Code by mistake or oversight, and that it still is the law in this State. In *Hill* v. *Fourth National Bank,* supra, this court held that the statute of limitations applicable to all suits for recovery of personal property is that so declared by the act cited; and we adhere to these rulings.

■ In their motion for new trial the defendants further alleged: "After the conclusion of the evidence in this case, counsel for the plaintiffs moved the court to direct a verdict in favor of the plaintiffs and against the defendants, upon the ground that the undisputed evidence in the case showed that the stock certificates had been in the possession of Mrs. Grace E. Kittles and Mrs. May A. Kittles, executrix, and their predecessors in title, for a period of more than four years prior to the instituting of this suit, and the defendants were therefore barred by the statute of limitations from claiming that the stock was the property of H. H. Parker and was not the property of Mrs. Grace E. Kittles and Mrs. May A. Kittles, executrix, which said motion, after argument had thereon, was illegally granted by the court, and a verdict in favor of the plaintiffs and against the defendants was illegally directed by the court over objection of counsel for defendants; because said verdict was contrary to law, and to the admissions in the pleadings and to the evidence in the case as follows, to wit: As to the pleadings in the case: (a) The fourteenth paragraph of the petition alleges: 'Demand has been made upon the Woodcliff Gin Company, through its president, H. H. Parker, that said certificates of stock be transferred into the name of your petitioners upon the books of said corporation by the issuance of new stock in said corporation to them upon the surrender of the certificates now held by petitioners; your petitioners have tendered said stock to be surrendered upon the issuance of new certificates, but the said H. H. Parker, president of said corporation, refuses to allow new stock to be issued.' Which said fourteenth paragraph was admitted in the answer of the defendants. (b) The fifteenth paragraph of the petition alleges: 'The said H. H. Parker acting in his individual capacity refused to authorize the officers of said corporation to make said transfer upon the books of said corporation, but continues to use said stock, voting the same in the stockholders and directors meetings of said corporation, has drawn and used and continues to draw and use the dividends declared upon said

stock, and refused to account to your petitioners for the dividends so used; refuses to allow your petitioners to exercise any control over said stock or to examine the books of said corporation for the purpose of determining what their rights may be, as shown by the books of said corporation.' Which said fifteenth paragraph was admitted in the answer of the defendants.

"As to the evidence in the case: (1) The testimony of Thomas Getzen was as follows: 'The date that these certificates of stock were sold by the referee was about the year 1927, between 1925 and 1928. The certificates of stock were sold at a private sale and not at a public sale. The sale of the certificates of stock was made to Mr. Kittles in the old office building of Barrett & Co. I do not recall the amount paid for the stock. I do not believe that Mr. Parker was notified regarding the transaction.' (2) The testimony of H. H. Parker was as follows, to wit: 'These stocks that are in evidence are my stocks. In answer to your question as to whether or not I transferred these stocks to any one, I did not. I put them up as collateral against a cotton account with Barrett & Company, which was evidenced by the receipt from Barrett & Company, as follows: "Received of H. H. Parker 17 shares of Farmers Bank Stock, two certificates for 21 shares of Woodcliff Gin Company stock, and note signed by L. W. Parker for $1,000; this collateral to be held only as security against your cotton account; upon payment of this amount in full, this collateral to be returned to you at Woodcliff, Georgia. [Signed] Barrett & Company."' The account sales from Barrett & Company to H. H. Parker and the current account of H. H. Parker with Barrett & Company all showed that at the time Barrett & Company went into bankruptcy H. H. Parker owed Barrett & Company nothing, but on the contrary Barrett & Company owed H. H. Parker the sum of one thousand and some odd dollars. The testimony of H. H. Parker, that the reason why he did not get his stock back from Barrett & Company was that he went up there and tried to get the stock from Barrett & Company, but they could not locate it for him, that he did not owe Barrett & Company anything on the stock, and the stock is his own stock; that he had no notice at all from Barrett & Company, or the trustee, of their intention to sell his stock; that they have never served him with notice that they held his stock as security, that they did not serve him with notice that they were going to sell

his stock, that he never had any notice it was sold until Mr. Peter Kittles got hold of it in 1924, which was after it was sold, and he didn't have any notice at all from Barrett & Company that he could not get his stock from them, and he was only notified by Mr. Kittles and he said he held the stock. The testimony of H. H. Parker, as follows, to wit: 'No, sir, this is not the first opportunity I have had to defend my title to this stock. They had it advertised for sale, I think, in 1927, by the estate of Mr. Will Kittles or Pete Kittles, by the executor in Savannah. They had it advertised for sale on the first Tuesday, and Judge Boykin filed some kind of a paper and stopped the sale of it. This is the second time that I have defended my title to this stock.' And on cross-examination H. H. Parker testified as follows: 'In answer to your question, you stated that you defended your title, what was done about this stock here; then did you recover possession of it? I answer, no, sir. In answer to your question as to whether I made any effort to recover possession of it, I answer, yes, sir. You ask if I entered into litigation about it, if I made an effort to recover it. I answer that I never found it until 1924. I knew where it was in 1924, after Mr. Kittles got hold of it. I know that Mr. Kittles had it, but I do not know that he claimed he bought it, or what he claimed. I did know that Mr. Kittles was claiming title to that stock by reason of having bought it at the bankrupt sale. I made no effort at that time to recover possession of it, not right then. I have never instituted an action in trover for the purpose of recovering the stock. You ask if I just let it rock along until finally this action was brought by the present holders of the stock to require me as president to make certificates in their name. My answer is, no, sir. Judge Boykin filed something in Savannah to stop the sale.'"

After setting out the above pleading and evidence, movants allege that the court, in holding that the defendants were barred by the statute of limitations from claiming that the stock was the property of H. H. Parker and was not the property of Mrs. Grace Kittles and Mrs. May A. Kittles, executrix, and in directing a verdict in favor of the plaintiffs and against the defendants, over the objection of defendants' counsel, committed error against these defendants which entitles them to the grant of a new trial. There is in this case but one issue of fact, and that is whether or not the debt due by Parker to Barrett & Co. was paid at the time these

certificates of stock were sold by their trustee in bankruptcy. As will be seen, Parker testified that it was paid, and introduced account sales of cotton and an account current between him and Barrett & Co., which, he claims, shows that it was paid. On the other hand the plaintiffs introduced testimony to the effect that this indebtedness had not been paid, and that the stock was sold and the proceeds applied to the payment of this indebtedness. The view we take of this case is that it is immaterial whether that debt was paid or not, in reaching the correct decision in this case. Under the undisputed evidence the plaintiffs showed that they had acquired a title by prescription to these certificates of stock; and the undisputed evidence further shows that the right of Parker to these certificates had been barred by the statute of limitations. The facts upon which the defendants rely, as set out in full above, do not sustain their contention. We are of the opinion that under the principles of law hereinbefore announced, and the evidence in the case, the plaintiffs had acquired by prescription a title to these certificates of stock, and that the evidence demanded a finding that the claim of Parker to these certificates was barred by the statute of limitations. The judge did no err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*