O'CALLAGHAN *v.* BANK OF EASTMAN.

No. 10789. JULY 12, 1935.

*D. D. Smith,* for plaintiff.

*Thomas J. Sappington, Park & Strozier,* and *Smith & Ross,* for defendant.

BELL, Justice. On January 17, 1934, Mrs. Birdie O'Callaghan filed in the superior court of Dodge County a suit against the Bank of Eastman to recover sums of money collected by the bank on notes alleged to have been delivered to the bank as security for a debt of her husband. The defendant bank filed a demurrer based upon general grounds and also upon the specific ground that the alleged cause of action was barred by the statute of limitations. The trial judge held that the petition stated a cause of action, but sustained the ground of demurrer invoking the bar and dismissed the petition. To this judgment the plaintiff excepted by a bill of exceptions which was made returnable to the Supreme Court. The bank, as defendant in error, moved a transfer to the Court of Appeals, upon the ground that the suit was an action at law and was not otherwise such a case as would fall within the jurisdiction of the Supreme Court.

The petition, as amended, alleged the following facts: On July 11, 1927, the plaintiff's husband was indebted to the bank in the sum of $11,000 or other large sum, with which the plaintiff had no connection. "Shortly prior to said date" the bank was demanding and urging payment or security; and on being informed by the plaintiff's husband that he was unable to pay the debt and had no security to offer, the bank desired to know "whether or not petitioner had any liberty bonds or security that could be put up against such indebtedness," whereupon the husband debtor informed the bank of certain promissory notes held by the plaintiff against her brother, W. J. Daniel. Upon receiving this information the bank suggested to the husband that he see whether or not the wife would be willing to put up these four notes of $1000 each and one note for $2666.66. The bank "then and there informed

814

petitioner's husband that unless the matter was thus arranged by two o'clock of said date [July 11, 1927] that they would institute proceedings against him on his indebtedness and close him out. At that time petitioner's said husband was engaged as a merchant in the hardware business, operating under the name of Rogers Hardware Company." "Upon submitting this ultimatum to petitioner's said husband, her said husband, together with defendant's attorney at law, immediately came to petitioner's home, which was about eleven or twelve o'clock in the daytime, and there defendant's attorney at law informed your petitioner of the attitude of defendant with reference to her said husband's indebtedness, and told your petitioner that unless the notes . . were turned over to said defendant as security for her husband's said debt, that the said defendant would, by two o'clock, institute proceedings against her said husband on his indebtedness, and close out his business hereinabove referred to. Your petitioner, unduly influenced by this information and threat, acting under duress and fear that her husband's business would immediately be closed out unless she consented thereto, yielded to the suggestion of the said defendant's attorney at law that she transfer certain notes to the said defendant to secure her husband's said debt, and would not have so done otherwise. . . That when petitioner, under the influence of said threat and said duress, unduly influenced as aforesaid, consented to transfer said notes to said defendant to secure her husband's said debt, the inquiry was made of defendant's said attorney at law as to just how the transfer should be effected; whereupon defendant's said attorney at law informed petitioner that it would be necessary to go through the formality of giving the notes to petitioner's husband, who in turn could transfer or indorse the same to said defendant; and said defendant's attorney at law insisting that the transaction be thus handled, your petitioner, under the fears and duress hereinabove referred to, yielded to defendant's attorney at law's suggestion and transferred said notes to her said husband in the form of a gift, and her said husband immediately, and as a part of the same transaction, in turn indorsed said notes over to the said defendant, and delivered same to defendant's attorney at law. . . That the transfer was not a gift or intended as such by petitioner to her said husband; that prior to said transaction she had never thought or discussed with her said husband anything

with reference to making him a gift of said notes; and your petitioner alleges that said transfers, effected as they were at the suggestion and direction of defendant's attorney at law, was nothing more nor less than a colorable transaction and was a scheme or device originating in the mind of defendant's said attorney at law and of defendant for the purpose and with the intention on the part of said attorney at law to attempt to give an air of legality to an illegal and void transaction, to wit: the transfer of your petitioner's separate estate as security for her husband's said debt. Your petitioner, at said time laboring under the influence of said threats, duress, and fears, and being unfamiliar with legal provisions governing such transactions, believing that it was necessary to save her husband's business from immediate loss, signed said transfers; and your petitioner alleges that under said circumstances, that while the form of legal transfer of the title to said notes was placed in defendant, that said transaction was illegal and void, and defendant acquired no valid title to said notes, and that under said circumstances your petitioner was entitled in law and equity to the benefit of any payments thereafter made to said defendant on said notes by the maker thereof, to wit, the said W. J. Daniel. . . Your petitioner alleges specifically that the said defendant had positive knowledge that said transfer of said notes, in manner and form stated, was done solely for the purpose of securing her husband's said debt, and that said transaction was a transfer of her separate estate for said purpose; and that the same is illegal and void, and that she would not have transferred the same in manner and form as stated had not said threats, duress, and representations, above referred to, been made to her as alleged. . . Your petitioner says that the said defendant, in thus acquiring possession of said notes, in equity, law, and good conscience acquired the same in the nature of a trust on behalf of your petitioner, and that all payments thereafter made to the said defendant by the said W. J. Daniel were made to it in its capacity as agent or trustee of your petitioner, and as such said defendant is in equity and good conscience bound to account to your petitioner and pay her the proceeds of any collections thus made, together with lawful interest on each payment from the date thereof at the rate of 7% per annum. . . After thus acquiring said notes your petitioner alleges that the said W. J. Daniel, the maker thereof, made the fol-

lowing payments to said defendant thereon, and said defendant collected and received the benefits of said payments, as follows: on 7/11/27 $500; on 9/19/27 $500; on 5/12/28 two payments each of $1000; on 10/3/28 $1000; on 12/3/29 $500; on 1/18/30 $250; on 2/15/30 $250; on 12/16/30 $500; and again on said date another sum of $500; on 12/28/31 $975; and on 11/23/33 $1000.
. . Plaintiff alleges that the defendant acquired said notes under the circumstances herein shown only as security for her husband's said obligation, still holding her said husband liable for the full amount of his obligation, retaining evidences of debt against him, and only crediting the same with the amounts that the said W. J. Daniel paid from time to time. . . That, with reference to the transfers of said notes, that plaintiff and her husband were forced into said transaction by the defendant, and that defendant's attorney at law, at the time of said transfers, represented to plaintiff and her said husband that the transfer from plaintiff to her said husband was a formality only, and your petitioner shows that her husband has ever recognized her title to said notes pledged as security aforesaid, and has never claimed to have legal title to said notes, but has ever recognized plaintiff's right and ownership of the same. . . That plaintiff did not know about the various payments referred to . . , or when they were made; that defendant never reported or accounted to her with reference to same; that plaintiff learned about them shortly prior to filing said suit, to wit, in the latter part of the year 1933, and thereafter, on January 15, 1934, had her attorney at law, D. D. Smith, to make demand on defendant for same, which demand was then and there refused. . . Plaintiff did not know her legal rights in reference to the subject-matter of this litigation until she discussed it with her attorney shortly prior to the filing of this suit, to wit, sometime in the latter part of the year 1933. . . Plaintiff says that defendant has never claimed to hold the notes referred to in said petition except as security for her husband's debt, and plaintiff says defendant acquired said notes, under the circumstances related, in the nature of a pledge as security for her said husband's debt, the general property or title in said notes, or proceeds of the collection of same, remaining in plaintiff, with a special property or lien only against said notes in defendant, which right in the defendant was illegal and void for the reasons hereinbefore set out.

. . Petitioner says, that, although requested and demanded so to do, the said defendant fails and refuses to account to her and pay her the said sum so collected as hereinabove referred to; and for the reasons stated your petitioner says that defendant is indebted to her in the said sum," amounting to $7975 together with interest in the sum of $2269.49. The amended prayers were as follows: "Wherefore petitioner prays that she do have and recover judgment against the said defendant for the said sum set forth; and that process do issue in terms of the law requiring the said defendant to be and appear at the next term of this honorable court, to be held in and for said county on the third Monday in May 1934, then and there to answer this, your petitioner's complaint. And that your petitioner have such other and further relief as to the court may seem meet and proper; that the said defendant be impressed with a trust as to the money collected by and from the said W. J. Daniel, as heretofore shown, and that it be declared, decreed, and determined that a trust exists, and one be established on the part of the defendant as trustee with reference to said money so collected, and that the said defendant be declared and decreed to hold said money as trustee for your plaintiff as cestui que trust, and that said trustee be required to account for and pay to your petitioner the said several sums of money, and that plaintiff have judgment accordingly."

The motion to transfer the case to the Court of Appeals is denied. The only question for decision on this motion is whether the petition, as amended, made "an equity case" within the meaning of the constitutional provision relating to the jurisdiction of this court. Code of 1933, § 2-3005. All trusts are matters over which courts of equity may exercise jurisdiction in this State. Code of 1933, § 108-117; *Wallace* v. *Mize,* 153 *Ga.* 374 (3), 383 (112 S. E. 724). Where an action is brought in a superior court, which may exercise equity jurisdiction, the question of whether it is a suit in equity or one at law is determined by the allegations and prayers. *Bernstein* v. *Fagelson,* 166 *Ga.* 281, 287 (142 S. E. 862). These are the evidence of the plaintiff's intention, and, in considering them for the purpose of ascertaining such intention, those which are stated with particularity should take precedence over such as are expressed in general terms only. *Burton* v. *Metropolitan Life Insurance Co.,* 177 *Ga.* 899 (3) (172 S. E. 41). It

is apparent that the plaintiff in this case is seeking equitable relief, and her petition therefore should be considered as a case in equity, even though it may not state a valid and subsisting cause of action for such relief. The jurisdiction of this court is not limited to good cases in equity, but will embrace both good and bad equity cases. Where a suit is brought in a superior court, and it is apparent from the allegations and prayers that the plaintiff is seeking equitable relief, the question whether the petition states a subsisting cause of action for such relief, or whether it is barred by the statute of limitations, should be decided by the court sitting as a court of equity and not as a court of law. In such case, appellate jurisdiction is vested in the Supreme Court and not in the Court of Appeals. *Gormley* v. *Slicer,* 178 *Ga.* 85 (172 S. E. 21); *Evans* v. *Pennington,* 50 *Ga. App.* 146 (177 S. E. 357).

■ The petition showed upon its face that the cause of action was barred by the statute of limitations, and the ground of demurrer claiming such bar was properly sustained. As to the enforcement of an implied trust it has been held that the period of limitation is seven years. *Stonecypher* v. *Coleman,* 161 *Ga.* 403 (2b) (131 S. E. 75). But the allegations here do not show a trust, and a different period must be applied. Under the facts stated, the plaintiff had an election to treat the transaction between her and the bank as void, and by her allegations she has so treated it. *Campbell* v. *Trunnell,* 67 *Ga.* 518; *Palmer* v. *Smith,* 88 *Ga.* 84 (13 S. E. 956); *Jones* v. *Harrell,* 110 *Ga.* 373 (35 S. E. 690); *Taylor* v. *Allen,* 112 *Ga.* 330 (37 S. E. 408); *Scaife* v. *Scaife,* 134 *Ga.* 1, 4 (67 S. E. 408); *Calhoun* v. *Hill,* 35 *Ga. App.* 18 (131 S. E. 918). If the legal title thus remained in the plaintiff, the bank could not hold as a trustee. This is true for the reason that the trustee and not the cestui que trust must hold the legal title. Code of 1933, §§ 108-106, 108-107. It appears from the petition that the legal title to the notes was in the plaintiff, and that possession was wrongfully obtained and withheld by the defendant. The statute of limitations as to suits for personalty is therefore applicable. "All suits for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues, and not after." Code of 1933, § 3-1003. *Woodcliff Gin Co.* v. *Kittles,* 173 *Ga.* 661 (2), 669 (161 S. E. 119). While the

defendant may not have held these notes or the proceeds adversely to the plaintiff's husband, who was the debtor, it did hold them adversely to the plaintiff from the time she delivered the notes indirectly through her husband, as stated in the petition. A cause of action for recovery of the notes instantly accrued in her favor, and after the lapse of four years her right of action was barred. *Hill* v. *Fourth National Bank,* 156 *Ga.* 704 (120 S. E. 1). The fact that she is suing for the proceeds or the amount collected would not alter the case. The notes themselves constituted the subject-matter of the conversion, and the plaintiff has no better or different claim to the amount subsequently collected by the bank thereon.

Nor is the result different because of the allegations as to fraud and duress. A trust will be implied "where from any fraud one person obtains the title to property which rightly belongs to another." Code of 1933, § 108-106(2). It is also true that duress is a species of fraud. But, to overlook in this connection the allegations that the title did not pass, the facts stated do not constitute such fraud or duress as would entitle the plaintiff to hold the bank as a trustee. It does not appear that the plaintiff was not a woman of normal mental faculties, and there is no averment that the *facts* were misrepresented. Hence there is nothing to show fraud. Nor would the facts that her husband was in the mercantile business and that the bank threatened to institute legal proceedings and "close him out" amount to duress within the meaning of the law, it not appearing that the bank was about to proceed unlawfully for that purpose. *Perryman* v. *Pope,* 94 *Ga.* 672 (21 S. E. 715); *Savannah Savings Bank* v. *Logan,* 99 *Ga.* 291 (2) (25 S. E. 692); *Hoke* v. *Atlanta,* 107 *Ga.* 416 (2) (33 S. E. 412); *Strange* v. *Franklin,* 126 *Ga.* 715 (55 S. E. 943); *Lichtenstein* v. *Wilensky,* 151 *Ga.* 353 (107 S. E. 49); *Keller* v. *Levison,* 165 *Ga.* 178 (140 S. E. 493); *Williams* v. *Buchanan,* 17 *Ga. App.* 466 (87 S. E. 605), and cit.; *Miller* v. *Keys Commission Co.,* 25 *Ga. App.* 100 (2) (102 S. E. 555). Accordingly, there was no implied trust on account of fraud or duress. As to a mere action for damages for fraud or duress, the period of limitation is the same as that for the recovery of personal property,—four years. Code of 1933, § 3-1002. See also *Crawford* v. *Crawford,* 134 *Ga.* 114 (2, 3) (67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas.

932). The petition does not show ground for tolling any statute of limitations. As to fraud as a ground therefor, see Code of 1933, § 3-807; *Frost* v. *Arnaud,* 144 *Ga.* 26 (2) (85 S. E. 1028). With reference to the plaintiff's ignorance, it appears from the petition that she knew all the facts from the very beginning, although she may not have known "her legal rights" until shortly before the suit was filed. That is to say, she was merely ignorant of the law, and such ignorance does not suspend the statute of limitations. "Courts of equity will not relieve from the bar of the statute of limitations where a party has remained inactive from ignorance of his rights." *Adams* v. *Guerard,* 29 *Ga.* 651 (3) (76 Am. D. 624). See also Code of 1933, § 102-105; *Moore* v. *Moore,* 103 *Ga.* 517 (2) (30 S. E. 535); *Atlanta Trust & Banking Co.* v. *Nelms,* 116 *Ga.* 915 (2) (43 S. E. 380).

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents, and Gilbert, J., absent.*